The STATE of Ohio, Appellee,

v.

ZUZGA, Appellant.

[Cite as *State v. Zuzga* (2001), 141 Ohio App.3d 696.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 99 CA 97.

Decided March 8, 2001.

*Dionne Almasy,* Assistant Youngstown Law Director, for appellee.

*Albert Palombaro,* for appellant.

VUKOVICH, Presiding Judge.

Defendant-appellant Stephen Zuzga appeals the decision of the Youngstown Municipal Court that denied his motion to suppress the results of a blood test. Appellant argues that the court should have suppressed the blood-test results because the blood was not treated with an anticoagulant and there was no evidence of the temperature of the refrigerator in which the blood was stored. For the following reasons, the judgment of the trial court is affirmed.

## STATEMENT OF THE CASE

Appellant was involved in an automobile accident on October 7, 1998. He was transported to the hospital by a Youngstown police officer. After appellant consented to a blood test, a nurse drew appellant's blood for the officer. Appellant was charged with driving under the influence, driving with a prohibited blood-alcohol level, driving under suspension, driving without headlights, driving without a seatbelt, and failure to stop at a stop sign. Appellant filed a suppression motion, which was heard on February 5, 1999. The court denied the suppression motion, stating that the lack of an anticoagulant in the storage container did not reflect a lack of substantial compliance with the relevant administrative regulations. Thereafter, appellant pled no contest to driving under suspension and driving with a prohibited blood-alcohol level. The remaining counts were dismissed. This appeal followed.

## LAW

After appellant filed his suppression motion on the grounds that the state failed to comply with Ohio Adm.Code 3701-53-05, the state had the burden to prove substantial compliance with that administrative regulation. *State v. Plummer* (1986), 22 Ohio St.3d 292, 294, 22 OBR 461, 462-464, 490 N.E.2d 902, 904–

905. If the state established substantial compliance, then the burden shifted, and appellant had to prove that he was prejudiced by less than literal compliance. *Id.* at 295, 22 OBR at 464, 490 N.E.2d at 905.

The administrative regulation at issue contains the following requirements:

"(A) All samples shall be collected in accordance with division (D) of section 4511.19 or division (B) of section 1547.11 of the Revised Code, as applicable.

"(B) When collecting a blood sample, an aqueous solution of a non-volatile antiseptic shall be used on the skin. No alcohols shall be used as a skin antiseptic.

"(C) Blood shall be drawn with a sterile dry needle into a vacuum container with a solid anticoagulant, or according to the laboratory protocol as written in the laboratory procedure manual based on the type of specimen being tested.

"(D) [Pertains only to urine samples.]

"(E) Blood and urine containers shall be sealed in a manner such that tampering can be detected and have a label which contains [the name of the suspect, the date and time of collection and the initials of the person collecting and/or sealing the sample].

"(F) While not in transit or under examination, all urine and blood specimens shall be refrigerated."

## ARGUMENT AND ANALYSIS

Appellant's sole assignment of error argues that the court erred in denying his motion for suppression because the state failed to comply with Ohio Adm.Code 3701–53–05. Appellant claims that the state failed to show substantial compliance with the regulation due to a combination of two factors: an unknown refrigeration temperature and the lack of an anticoagulant. Appellant concedes that the state literally complied with the remaining requirements of the regulation.

As for the refrigeration argument, the officer testified that he placed the sample in the refrigerator in the evidence locker at the police station. When asked on cross-examination about the temperature of the refrigerator, the officer stated that he did not notice the temperature but that it felt cold.

There is no requirement in the code that a refrigeration calibration log be kept by police. In support of his refrigeration argument, appellant cites a case that was decided under an old code section. See *Mason v. Murphy* (1997), 123 Ohio App.3d 592, 704 N.E.2d 1260 (stating that substantial compliance cannot be shown when no evidence is presented concerning the temperature at which the blood sample was stored). The prior version of Ohio Adm.Code 3701–53–05(F) specifically required that the refrigerator be kept at 42 degrees Fahrenheit. However, this requirement was repealed prior to the date of appellant's offense.

Hence, the officer's testimony that he placed the sample in the refrigerator in the evidence locker and that the refrigerator was cold demonstrates substantial, if not literal, compliance with Ohio Adm.Code 3701–53–05(F).

Appellant also argues that the lack of testimony by the nurse about refrigeration shows a lack of substantial compliance. However, the nurse testified that she relinquished control over the sample to the officer immediately after drawing the sample; hence, this argument is meritless. We also note that nonrefrigeration tends to decrease a sample's alcohol content. *Plummer* at fn. 2. See, also, *State v. Vermillion* (June 24, 1999), Belmont App. No. 98BA16, unreported, at 2, 1999 WL 436737.

██ As for the lack of an anticoagulant, the nurse testified that she did not place an anticoagulant in the blood sample because it was not hospital policy to use an anticoagulant when drawing blood for testing. The court found substantial compliance with the administrative regulation even in the absence of an anticoagulant. For example, the nurse drew appellant's blood within two hours of the accident. She used a nonalcoholic antiseptic swab, a dry and sterile needle, a vacuum container, and a secured stopper. A gummed sticker was placed on top of the tube and information was written on it by the nurse and the officer. The nurse did not use an anticoagulant but testified that it was hospital policy to draw blood for testing without adding an anticoagulant. The officer transported the sample to the evidence locker in the police station and placed it in a cold refrigerator.

However, there is no significance to this noncompliance relative to appellant. As stated in his brief: "Appellant concedes that failure to use a solid coagulant in connection with blood samples taken as required by the Department of Health does not in itself render the test inadmissible." As support for his concession, he cites *Murphy,* which cited *State v. Perry* (1996), 108 Ohio App.3d 709, 713, 671 N.E.2d 623, 625–626. In *Perry,* the Ninth Appellate District held that the nurse's failure to use an anticoagulant did not render the test results inadmissible because the " 'use of the anticoagulant is for the benefit of the State so as to prevent the defendant's blood from coagulating (or solidifying) so as not to be receptive to testing.' " *Id.,* quoting *State v. Maudlin* (July 24, 1989), Clark App. No. 2494, unreported, 1989 WL 83920. See, also, *State v. McKinnon* (1987), 38 Ohio App.3d 28, 30, 525 N.E.2d 821, 823–824; *State v. Mays* (1992), 83 Ohio App.3d 610, 614, 615 N.E.2d 641, 644.

██ Appellant proposes that although the lack of an anticoagulant will not *per se* require suppression, the combination of the lack of an anticoagulant and the refrigeration issue will require suppression.[1] From such an argument, it is

---

1. For instance, in *State v. Carsonie* (Aug. 2, 1990), Mahoning App. No. 89CA90, unreported, 1990 WL 109868, this court held that the results of a blood test are incompetent where the

apparent that appellant does not understand the reasoning behind the "substantial compliance" rule. The key element is whether there was enough compliance with the rules and regulations relative to testing blood-alcohol level to ensure the reliability of the test result. Accordingly, it is not sufficient merely to show there were some deviations from the testing protocol. Rather, one must be able to show a nexus between the alleged deviation and the potential for an erroneously higher test result. Without this showing of prejudice or compromise of the validity of the test result, one cannot negate the presumption of the validity of the test result that accompanies a showing by the state of substantial compliance with the rules and regulations set forth in the Administrative Code. See *Plummer*, 22 Ohio St.3d at 295, 22 OBR at 464, 490 N.E.2d at 905.

 Here, appellant failed to allege any prejudice that resulted from the claimed deviations from the testing procedures set forth in the Administrative Code. Indeed, it appears that, if anything, the deviations complained of might result in a lower blood-alcohol reading, which could hardly be prejudicial to appellant. Therefore, the assignment of error set forth by appellant is without merit and is overruled.

For the foregoing reasons, the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

GENE DONOFRIO and WAITE, JJ., concur.

---

doctor testified that he usually uses an alcohol swab even though a nonalcoholic swab is preferable and required, could not recall if he sealed or labeled the tube of blood, and did not use an anticoagulant. *Id.* at 3 (refusing to reverse because although we found error in admitting the results, we did not find plain error where appellant failed to object at trial). Although the *Carsonie* court did not engage in a substantial-compliance analysis, the existence of multiple examples of noncompliance factored in the statement that the results were incompetent. The case at bar is distinguishable from *Carsonie* in that we are dealing with a suppression motion and utilizing the substantial-compliance standard set forth by the Supreme Court in *Plummer*.