STATE, Appellee,

v.

SCURTI, Appellant.

[Cite as *State v. Scurti,* 153 Ohio App.3d 183, 2003-Ohio-3286.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 02 CA 140.

Decided June 19, 2003.

184

Paul Gains, Mahoning County Prosecuting Attorney, and Jan O'Halloran, Assistant Prosecuting Attorney, for appellee.

Scott Cochran, Youngstown, for appellant.

VUKOVICH, Judge.

{¶ 1} Ronald Scurti appeals his conviction in Mahoning County Court No. 4 for driving under the influence in violation of R.C. 4511.19. The issue raised in this appeal is whether the state showed substantial compliance with Ohio Adm.Code 3701–53–02 at the suppression hearing. For the reasons stated below, the judgment of the trial court is affirmed.

## STATEMENT OF THE CASE

{¶ 2} In November 2001, Scurti was stopped after a state trooper observed him speeding. Upon approaching the vehicle, the trooper noticed a strong smell of alcohol and requested Scurti to submit to field sobriety tests. After a purported failure to adequately complete the field sobriety tests, Scurti was arrested and transported to the State Highway Patrol Canfield Barracks where a breathalyzer test was performed on BAC DataMaster machine No. 930022. Scurti's blood alcohol concentration was .189.

{¶ 3} Scurti was charged with violating R.C. 4511.19(A)(1) and (A)(6), i.e., operating a vehicle while under the influence of alcohol with "a concentration of seventeen-hundredths of one gram or more by weight of alcohol per two hundred ten liters of the person's breath." Prior to trial, Scurti moved to suppress the results of the breath test, claiming that machine No. 930022 underwent software modifications after the Director of the Ohio Department of Health ("ODH") approved the machine, which required a reapproval by the Director before it could be used. At the suppression hearing, the parties stipulated that BAC DataMaster machine No. 930022 was taken out of service from March 7, 2001, to May 15, 2001, for maintenance and software updates. The state called John Fusco, CEO of National Data Systems, Inc. ("NDS"), the manufacturer of the BAC DataMaster, to testify and submitted Exhibit A, letters from NDS to the ODH and letters from ODH to NDS indicating that the software changes were acceptable. Scurti stipulated to the authenticity of the letters but objected to the admissibility of the letters from NDS to ODH based on hearsay. Scurti also argued that the majority of Fusco's testimony was inadmissible hearsay on the ground that Fusco lacked the required expertise in computer software programming to qualify him as an expert as to whether the analytical function of the machine was altered by the installation of the new software. Scurti moved to have Fusco's entire testimony stricken from the record. The trial court took the matter under advisement and ordered the parties to file posthearing briefs.

{¶ 4} On June 6, 2002, the trial court overruled Scurti's suppression motion. The trial court held that Fusco was qualified to testify as an expert witness and his testimony was admissible. The court stated that Fusco testified that the software changes were necessitated by the installation of a new printer in the BAC DataMaster, and the software changes would not affect the analytical function of the machine. Relying on the testimony and exhibit, the trial court held that the modifications were implemented in substantial compliance with the applicable laws and regulations, thereby resulting in no prejudice to Scurti.

{¶ 5} As a result of this finding, Scurti pled no contest and was sentenced to 30 days in the Mahoning County Jail and assessed a $350 fine; both were suspended. Scurti timely appeals, raising a single assignment of error.

## ASSIGNMENT OF ERROR

{¶ 6} "The trial court erred in overruling the defendant-appellant's motion to suppress wherein defendant-appellant sought to exclude the breath test results on the grounds that the BAC DataMaster, machine No. 930022, had been modified and the state of Ohio failed to demonstrate substantial compliance with [Ohio Adm.Code] 3701–53–02."

{¶ 7} After Scurti filed his suppression motion on the grounds that the state had failed to comply with Ohio Adm.Code 3701–53–02, the state had the burden to prove substantial compliance with the administrative regulation. *State v. Zuzga* (2001), 141 Ohio App.3d 696, 698–699, 753 N.E.2d 229, citing *State v. Plummer* (1986), 22 Ohio St.3d 292, 294, 490 N.E.2d 902. If the state established substantial compliance, then the burden shifted, and Scurti had to prove that he was prejudiced by less than literal compliance. *Zuzga*, 141 Ohio App.3d at 699, 753 N.E.2d 229, citing *Plummer*, 22 Ohio St.3d at 295, 490 N.E.2d 902.

{¶ 8} The administrative regulation at issue states that the BAC Data-Master is an approved evidential breath testing instrument:

{¶ 9} "The instruments listed in this paragraph are approved as evidential breath testing instruments. In addition to any other purposes for which they may be used, evidential breath testing instruments are approved for use in determining whether an individual's breath contains a concentration of alcohol prohibited * * *. The approved evidential breath attesting instruments are:

{¶ 10} "(1) Intoxilyzer model number 5000;

{¶ 11} "(2) Alco–Sensor RBT III;

{¶ 12} "(3) BAC Verifier;

{¶ 13} "(4) BAC DataMaster." Ohio Adm.Code 3701–53–02(A).

{¶ 14} Scurti claims that machine No. 930022 is not the approved version of the DataMaster enumerated by this section because of software updates that were added after ODH had approved the BAC DataMaster.[1] The software updates changed the machine's calibration from .105 to .100 and allowed it to work with the new printer and modem. The state introduced Exhibit A, which consisted of letters from NDS to ODH and letters from ODH to NDS,[2] to show approval for the modifications. Scurti claims that the letters from NDS to ODH were inadmissible hearsay and that the letters from ODH to NDS do not constitute approval of the software modifications because the letters were not signed by the Director of ODH. Therefore, according to Scurti, the trial court erroneously relied on the contents of the letters in overruling the motion to suppress.

---

1. Scurti stated during oral arguments that if we hold that the state did not substantially comply in this situation, that holding would not affect all the BAC DataMaster machines that have been altered by software modifications, because new regulations have been enacted to remedy the situation. The new and current regulation states that the BAC DataMaster and BAC DataMaster cdm are approved evidential breath machines.

2. The first letter from ODH, dated January 4, 2000, states that the modifications to the BAC instrument that uses the new printer and modems are approved. The second letter, dated January 5, 2000, states that the changes to the software for the BAC DataMaster were approved and that the default calibration value of .100 would be used.

{¶ 15} The trial court admitted Exhibit A under the public-records exception enumerated in Evid.R. 803(8). Evid.R. 803(8) contains two prongs under which records can be admitted. Subsection (a) of Evid.R. 803(8) allows for the admission of records, reports, statements, or data compilations that set forth the activities of the agency or office. Subsection (b) allows for the admission of records, reports, statements, or data compilations that set forth matters observed pursuant to a duty imposed by law, which requires a duty to report. Under both sections, the record or report must be such that, given the nature of the document, the essential guarantee of trustworthiness is either inherently satisfied or is subject to circumstantial verification. Evid.R. 803(8); Weissenberger, Ohio Evidence (2003), Section 803.104. Evidentiary rulings lie within the broad discretion of the trial court and will be reversed only upon an abuse of discretion amounting to prejudicial error. *State v. Morrow* (2000), 138 Ohio App.3d 38, 41, 740 N.E.2d 314, citing *State v. Graham* (1979), 58 Ohio St.2d 350, 352, 390 N.E.2d 805.

{¶ 16} The trial court erroneously admitted Exhibit A under Evid.R. 803. It is clear that the letters from ODH to NDS fall within the ambit of the public-records exception and are admissible, but the letters from NDS to ODH are inadmissible under Evid.R. 803. Subsection (a) of the rule is inapplicable because the letters were authored by NDS and not by ODH. This is significant because the focus under subsection (a) is on the internal functions of the relevant agency. Therefore, when the information contained in particular records concerns the activities and conduct of certain citizens, events, or transactions that are external to the operation of the agency, it should not be admitted under subsection (a). Weissenberger, Ohio Evidence (2003), Sections 803.104, 803.105. Information created by a secondary source, a nonpublic source, and placed in a public agency's file will not be automatically converted into a public record for the purposes of Evid.R. 803(8). *State v. Jack* (Apr. 23, 1998), 4th Dist. No. 97CA10, 1998 WL 230033; *State v. Sandusky* (July 25, 1997), 2d Dist. No. 16103, 1997 WL 435702 (discussing secondary information, manufacturer's report of replacement and repair of breathalyzer machine, in a police file), citing *State v. Vogelsong* (1992), 82 Ohio App.3d 354, 612 N.E.2d 462; *State v. Breeze* (1993), 89 Ohio App.3d 464, 624 N.E.2d 1092. The reason for this is the underlying presumption to the public-records exception that public servants perform the agency's official tasks carefully, promptly, and without bias or corruption. As such, an indicia of reliability exists. Weissenberger, Ohio Evidence (2003), Section 803.103. However, no presumption exists for the actions of nonpublic servants providing information to the agency. Accordingly, the letters from NDS (a private company) to ODH, even though kept on file with ODH, are not a public record. Subsection (a) does not apply. Therefore, to be properly admitted under Evid.R. 803, subsection (b) must apply. Id. at Section 803.106.

{¶ 17} The plain language of subsection (b) of Evid.R. 803(8) indicates that it also is inapplicable to the facts at hand. The letters and the information that they contain are not "matters observed pursuant to duty imposed by law as to which matters there was a duty to report." Evid.R. 803(8)(b). NDS is not a public employee and does not have a duty imposed by law to observe and report on whether the software changes affected the analytical readouts of the breathalyzer machine. Therefore, State's Exhibit A, which contained the letters from NDS to ODH, were inadmissible under the public-records exception to hearsay.

{¶ 18} However, the state argues that even if the two letters from NDS are inadmissible under Evid.R. 803(8), they are admissible under Evid.R. 803(6), the business-records exception. Evid.R. 803(6) allows the admission of records of regularly conducted activity "in any form of acts, events or conditions made at or near the time by or from information transmitted by a person with knowledge if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum report, record or data compilation all as shown by testimony of the custodian or other qualified witness."

{¶ 19} Accordingly, our inquiry is directed to whether the four elements of the rule may be gleaned from the facts in the case sub judice. First, Evid.R. 803(6) requires that the letters represent a regular business activity and a regularity of record keeping. Here, Fusco testified that the proper procedure that the company followed was to write a letter to ODH requesting approval for the new software. Second, the source of the information must be from a person with knowledge. Fusco testified that while he did not know exactly what day the request was going to be sent out, he knew that the company was in the process of sending the request. Furthermore, Fusco, the president and CEO, gave the author of these letters, Van Stee, the authority to deal directly with the ODH regarding the modifications. Third, the information must be recorded at or near the time of the occurrence. Here, the letters were written near the time of the occurrence. Last, the testimony must come from the custodian or qualified person; however, "the witness providing the foundation need not have first hand knowledge of the transaction." *State v. Vrona* (1988), 47 Ohio App.3d 145, 148, 547 N.E.2d 1189. Rather, it must be demonstrated that the witness is sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance, and retrieval that he can reasonably testify on the basis of this knowledge that the record is what it purports to be and that it was made in the ordinary course of business consistent with the elements of Evid.R. 803(6). Id. From the foregoing, we must conclude that Fusco was a qualified witness and the documents he identified were properly admitted under Evid.R. 803(6).

{¶ 20} Regardless of whether Exhibit A was properly admitted, Fusco testified to all the information contained in that exhibit. However, Scurti contends that the trial court erred when it allowed Fusco to testify as an expert because the foundational requirements enumerated in Evid.R. 702 were not met. Evid.R. 702 requires: (A) that the witness's testimony relate to matters beyond the knowledge or experience possessed by a lay person; (B) that the witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of his testimony, and (C) that the witness's testimony is based on reliable scientific, technical, or other specialized information. A trial court's determination of whether an individual qualifies as an expert will only be overturned by an appellate court for an abuse of discretion. *State v. Hartman* (2001), 93 Ohio St.3d 274, 285, 754 N.E.2d 1150; *State v. Baston* (1999), 85 Ohio St.3d 418, 423, 709 N.E.2d 128. Scurti does not dispute that subsection (A) of Evid.R. 702 is not at issue because an expert is needed to explain the impact of these software updates on the analytical data processing of the BAC DataMaster. As such, Scurti's argument with the trial court's acceptance of Fusco as an expert lies within subsections (B) and (C) of Evid.R. 702.

{¶ 21} Scurti's arguments under Evid.R. 702(B) and (C) are meritless. Under subsection (B) of Evid.R. 702, the individual offered as an expert need not have complete knowledge of the field in question, or for that matter, be the best witness on the subject. *Hartman*, 93 Ohio St.3d at 287, 754 N.E.2d 1150; *Baston*, 85 Ohio St.3d at 423, 709 N.E.2d 128. The test is whether a particular witness offered as an expert possesses knowledge that will aid the trier of fact in performing its fact-finding function. *Hartman*, 93 Ohio St.3d at 287, 754 N.E.2d 1150. Fusco testified that his company owns the BAC DataMaster product and has been in this business for the past 25 years. He stated he has personally attended numerous maintenance and theory seminars in electronics, breath-testing technology, traffic radar, and a 40–hour course on the technology of breath analysis. Fusco also testified that at these training seminars, he was instructed on the engineering of computer software for breath-testing instruments. However, he did state that he has not tried to engineer computer software of this type since the early 1990s. He also stated that he could not explain in specific terms how the computer software was altered due to the fact that the engineering specifications for computer software are extremely detailed and complicated; however, he could explain it in general terms. While Fusco may not be the best witness on the subject of these software modifications, his extensive background and experience with the BAC DataMaster are sufficient to uphold the trial court's ruling that Fusco has specialized knowledge, training, or education about the BAC DataMaster. See Id.

{¶ 22} In finding that the trial court did not abuse its discretion, we note that Fusco's testimony was based upon specialized knowledge in accordance with Evid.R. 702(C). The phrase "other specialized knowledge" as found in the rules means information that has been acquired by that person through experience, training, or education and that would assist the trier of fact in understanding the evidence or a fact at issue that is beyond common experience. *State v. Stowers* (1998), 81 Ohio St.3d 260, 262, 690 N.E.2d 881. The expert's opinion may be based on facts or data perceived by him or it may be drawn from knowledge gained from other experts in the field. *State v. Lawson* (Feb. 28, 2000), 12th Dist. No. CA99–01–003, 2000 WL 221959. Fusco was asked whether he personally knew how the BAC DataMaster operated and about the software modifications made to the machine. Fusco explained how the BAC DataMaster operated and that the software modifications allowed the machine to operate with a new printer and modem, and he also explained the change in the default calibration. Fusco testified that the printer operates by a separate part of the software, not by the analytical part of the software, and that the software updates to accommodate the new printer could in no way impair, impede, or give an erroneous reading of the analytical value of the breath specimen tested. Therefore, despite Fusco's limited knowledge of the software, he stated that from his personal knowledge, due to the number of years he has operated in this business and his training in software programming, the software updates did not change the analytical process of the BAC DataMaster. Concerning the change in the default calibration, Fusco explained that a change in the default calibration does not change the software specifications, and therefore recalibration does not impact the analytical function of the machine. Given all the above facts and case law, it is difficult to conclude that the trial court abused its discretion by allowing his testimony.

{¶ 23} However, neither Fusco's testimony nor Exhibit A established that NDS had approval from ODH to make the software modifications. Fusco's testimony established that the communication from ODH to NDS and vice versa was done through letters of employees from NDS and ODH. The letters from ODH were not signed by the director of ODH but rather from an employee at ODH. While it is permissible for the director of ODH to delegate his authority to an employee to approve modifications of the machine, no evidence was submitted by the state to prove that the employee's signature on the letters was authorized by the director to approve the modifications, or to determine whether the analytical function of the machine was altered by the software modifications. *State v. Cooper* (1997), 120 Ohio App.3d 284, 291, 697 N.E.2d 1049. Therefore, admission of the letters into evidence were not proof of approval from ODH for the modifications or that the analytical functions of the machine were not altered by the modifications. However, while the letters in and of themselves are not dispositive of approval for the modification, they are sufficient to rebut the

general allegations undermining the impact of the modifications made, especially when taken in conjunction with Fusco's testimony. Therefore, Exhibit A, although not proof of approval, when taken in conjunction with Fusco's testimony, was sufficient to establish a substantial compliance with Ohio Adm.Code 3701–53–02, causing the burden to shift to Scurti to prove that he was prejudiced by less than literal compliance. *Zuzga,* 141 Ohio App.3d at 698–699, 753 N.E.2d 229. In other words, Scurti needed to show some indicia of prejudice as a result of the deviation from strict compliance. He failed to meet this burden since the evidence indicated that the software modifications did not affect the analytical functions of machine No. 930022.

{¶ 24} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

WAITE, P.J., and DeGENARO, J., concur.