OPINION
{¶ 1} Defendant-Appellant Kim Floyd appeals from his conviction and sentence for Aggravated Vehicular Assault, following a no-contest plea. Floyd contends that the trial court erred in denying his motion to suppress evidence of his blood test results, because the State failed to prove that it substantially complied with state regulations for drawing blood.
 {¶ 2} We conclude that the State did prove substantial compliance. Accordingly, the judgment of the trial court is affirmed.
 I {¶ 3} Floyd was indicted for Vehicular Assault and Aggravated Vehicular Assault as a result of his involvement in an automobile collision. He filed a motion to suppress blood-alcohol test results. The trial court overruled the motion in October, 2003. Later that month, the Ohio Supreme Court decided State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, which limited the substantial compliance standard "to excusing errors that clearly are de minimus." Thereafter, Floyd filed a second motion to suppress, based on Burnside, and a second hearing was held. The trial court again overruled Floyd's motion to suppress.
 {¶ 4} Floyd then pled no contest to Aggravated Vehicular Assault. He was found guilty, and sentenced to one year of imprisonment. From his conviction and sentence, Floyd appeals.
 II {¶ 5} Floyd's sole assignment of error is as follows:
 {¶ 6} "The trial court erred in overruling the suppression motion because the state failed to meet its burden of proving that it substantially complied with the state regulations pertaining to blood withdrawal procedures and more specifically, to whether the state used a solid anticoagulant."
 {¶ 7} Floyd argues that the trial court should have suppressed the blood — alcohol test result, because the State failed to prove that it substantially complied with Ohio administrative regulations when his blood was drawn. Specifically, he claims that the State failed to prove that the phlebotomist who drew his blood used a solid anticoagulant, as required by OAC 3701-53-05(C).
 {¶ 8} When reviewing a trial court's ruling on a motion to suppress evidence, an appellate court is bound to accept the trial court's factual findings if they are supported by competent and credible evidence, and the appellate court must then independently determine, as a matter of law, if the trial court's decision is proper under the appropriate constitutional or legal tests. State v. Williams (1993),86 Ohio App.3d 37, 41, 619 N.E.2d 1141. Because we find that there is sufficient inferential proof that a solid anticoagulant was used to support the trial court's finding of substantial compliance, we will affirm the decision of the trial court.
 {¶ 9} OAC 3701-53-05(C) provides that "[b]lood shall be drawn with a sterile dry needle into a vacuum container with a solid anticoagulant. . . ." As the Ohio Supreme Court warned in Burnside, "[t]his language does not advise the use of a solid anticoagulant when drawing a blood sample; it demands it." Burnside, supra, at 159. Thus, the failure to use a solid anticoagulant renders the blood test results inadmissible for lack of substantial compliance with the applicable regulations. Id., at 160.
 {¶ 10} In this case, Floyd concedes that anticoagulant was used, but insists that there is no evidence that it was a solid anticoagulant. In our view, however, there is circumstantial evidence that a solid anticoagulant was used. While the word "solid" may not have been used, the description of the procedures used for the blood draw imply that a solid anticoagulant was used. Thus, there was sufficient inferential proof of substantial compliance.
 {¶ 11} At the suppression hearing, Kayci Daugherty, the licensed phlebotomist who drew Floyd's blood, testified that she used a kit that was specifically used for blood draws requested by law enforcement officers. She explained that the kits are sealed and include the grey-topped tube required for the test. Daugherty further explained that the gray-topped tube contained an additive to keep the blood from clotting, an anticoagulant. If the tube had not had the gray top, indicating the presence of the anticoagulant, she would have requested another kit before drawing the blood.
 {¶ 12} Daugherty was aware of only two substances added to tubes used to draw blood: an anticoagulant, and a gel coagulant. She testified that the tube in this case contained not a gel coagulant, but an anticoagulant. After drawing the blood, she inverted the tube at least five times to ensure that the blood was mixed with the additive, so that it would not clot. Moreover, before giving the tube to the officer, Daugherty observed that the blood was not clotted or separated, reaffirming that there was an anticoagulant inside the tube. It would be difficult to see on visible inspection whether a liquid or gel anticoagulant has mixed with the blood, but it would not be hard to see that a solid had mixed, because the solid would be gone — dissolved in the liquid. With this evidence, the trial court could reasonably conclude that the additive used in this case was a solid anticoagulant, as required by the regulations.
 {¶ 13} Because the trial court's finding that a solid anticoagulant was used was supported by competent, credible evidence, the trial court properly concluded that the State had met its burden of proving substantial compliance with the regulations. Accordingly, the trial court correctly overruled Floyd's motion to suppress the blood-alcohol test result. Floyd's sole assignment of error is overruled.
 III {¶ 14} Floyd's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
Brogan, P.J., and Grady, J., concur.