OPINION
{¶ 1} Matthew Hess pled no contest in the Fairborn Municipal Court to driving under the influence in violation of R.C.4511.19(A)(1)(h) after the court had denied his motion to suppress evidence. The trial court found him guilty and sentenced him to 180 days in jail, with 155 days suspended. His driver's license was suspended for eighteen months. Hess appeals from his conviction.
 {¶ 2} On May 2, 2005, at approximately 3:25 a.m., Hess was stopped by a state trooper along I-675 for a speeding violation. Based on the trooper's observations at the time of the traffic stop, field sobriety tests, and a breath alcohol test, Hess was charged with driving under the influence with a blood alcohol level in excess of .17, speeding, and a seat belt violation. Hess pled not guilty and filed a motion to suppress the evidence of intoxication. The motion to suppress was denied. Hess changed his plea to no contest on the DUI charge, in exchange for which the state dismissed the other counts. Hess was found guilty and sentenced as described supra.
 {¶ 3} Hess raises one assignment of error on appeal.
 {¶ 4} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED THE APPELLANT[']S MOTION TO SUPPRESS."
 {¶ 5} Hess raises four arguments in support of his claim that the evidence against him should have been suppressed. Before we address these arguments, we will discuss the evidence offered by the state at the suppression hearing. Hess did not present any evidence.
 {¶ 6} State Trooper Brian Mangin testified that his attention was first drawn to Hess's vehicle on the night of May 2, 2005, because he believed that Hess was speeding. Mangin paced Hess's car by driving behind him and determined that he was going 76 m.p.h. in a 65 m.p.h. zone. During this time, Mangin also noticed that Hess was weaving within the lane. When Mangin approached Hess's car, he smelled a strong odor of alcohol. He also noticed that Hess's eyes were red and glassy and that his speech was slurred and slow. After making these observations, Mangin asked Hess to step out of his car and to perform several field sobriety tests. Hess failed the field sobriety tests. Mangin then performed a portable breath test on Hess, which indicated a blood alcohol level well above the legal limit. Hess was transported to the police station, where a Datamaster breath test was conducted. Hess's blood alcohol level was determined to be .174.
 {¶ 7} First, Hess challenges the trial court's denial of his motion to suppress on the ground that Trooper Mangin "searched" for evidence of intoxication without reasonable suspicion during the traffic stop. Hess claims that Mangin stuck his head inside the car to detect the odor of alcohol and that this conduct constituted an unjustifed expansion of the traffic stop. Mangin's testimony refuted this claim, however. Mangin stated that he smelled alcohol and observed Hess's red eyes and slurred speech when he approached the car. He also stated that Hess's weaving within the lane, although not a traffic violation, had raised a question in his mind about intoxication. He testified that he put his head slightly inside the car while Hess was getting his registration to get a closer look at the glove box and that, when he did so, he smelled a stronger odor of alcohol inside the car. Mangin's testimony made clear that he had already suspected Hess of being impaired by alcohol when he smelled the inside of the car, and it suggests that he put his head inside the car to assure his safety. As such, the trial court did not err in denying the motion to suppress on the basis that Mangin had unjustifiably expanded the scope of his investigation.
 {¶ 8} Second, Hess claims that Mangin failed to preserve exculpatory evidence, referring to the fact that Mangin destroyed his notes from his investigation the morning after the incident when he completed his report. Hess argues that he should not be convicted where the state failed to preserve exculpatory evidence. See Arizona v. Youngblood (1988), 488 U.S. 51, 58,109 S.Ct. 333, 102 L.Ed.2d 281.
 {¶ 9} We note that evidence must be materially exculpatory for due process concerns to arise. Id.; State v. Fuller,
Montgomery App. No. 18994, 2002-Ohio-2055. "To be materially exculpatory, `evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'"Fuller, supra, quoting California v. Trombetta (1984), 467 U.S. 479,489, 104 S.Ct. 2528, 81 L.Ed.2d 413. Furthermore, evidence shall be deemed material only if there is a reasonable probability that disclosure of the evidence would have affected the outcome of the proceeding. State v. Johnston (1988),39 Ohio St.3d 48, 62-63, 529 N.E.2d 989; Fuller, supra.
 {¶ 10} Mangin's testimony indicates that he destroyed his notes simply because he no longer needed them and did not do so in an attempt to keep information from Hess. More importantly, there is no indication that Mangin's notes contained exculpatory information or that the information contained therein differed in any way from the information contained in his report. Accordingly, there is no basis to conclude that the information contained in the notes was materially exculpatory and would have affected the outcome of Hess's case.
 {¶ 11} Third, Hess claims that the trial court erred in considering the results of the breath test because there was insufficient evidence that the solution used to calibrate the machine was refrigerated in accordance with Ohio Adm. Code3701-53-04(c).
 {¶ 12} At the suppression hearing, Officer Brian K. Griffith of the Fairborn Police Department testified that he was the senior operator in charge of the BAC Datamaster at the department and that he was responsible for calibrating the machine. He further testified that the calibration solution that he used on the machine was refrigerated in accordance with Ohio Adm. Code3701-53-04. Specifically, Griffith stated that the solution was kept in a refrigerator at the jail and that he was the only one who calibrated the machine. He acknowledged that other law enforcement personnel have access to the refrigerator but stated that he had never seen anyone remove the solution from the refrigerator. He also testified that, to his knowledge, cleaning staff does not open the refrigerator.
 {¶ 13} Based on this testimony, the trial court could have reasonably concluded that no genuine question as to the proper storage of the calibration solution had been raised so as to warrant suppression of the test results. Although, hypothetically, others may have had access and opportunity to move the solution out of the refrigerator, there is no evidence that anyone did so.
 {¶ 14} Fourth, Hess claims that the trial court erred in considering the breath test results because "no one * * * was able to relate the test results back to Mr. Hess at the time he was operating his automobile." Hess's BAC result of .174 placed him just within the enhanced sentencing range, the threshold for which is .17. He points out that his BAC test was conducted more than one hour after the initial stop and that it was unclear whether his blood alcohol level was rising or falling. In response, the state points out that the trooper complied with the R.C. 4511.19(D)(1) requirement that the analysis be done within two hours of the alleged violation.
 {¶ 15} It is undisputed that the BAC test was conducted within the statutory time limit, and no evidence was presented that demonstrated non-compliance with the Ohio Department of Health ("ODH") regulations for conducting such a test. Substantial compliance with the ODH regulations renders the test results reliable and admissible. State v. Blazek, Belmont App. No. 03BE77, 2004-Ohio-4862, citing State v. Burnside,100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71. Thus, the trial court did not err in refusing to suppress the results of the test. Hess's argument that his blood alcohol level might have been below .17 at the time of his arrest went to the weight of the evidence, not its admissiblity.
 {¶ 16} Hess's assignment of error is overruled.
 {¶ 17} The judgment of the trial court will be affirmed.
 . . . . . . . . . .
Brogan, J. and Fain, J., concur. `