DECISION AND JUDGEMENT ENTRY
{¶ 1} This is an appeal from a judgment of conviction in the Norwalk Municipal Court for having nonconforming tinted auto glass. For the reasons that follow, we reverse.
 {¶ 2} On January 7, 2006, an officer of the Ohio State Highway Patrol stopped appellant, K. Ronald Bailey, on U.S. 20 in Huron County for failing to display a front license plate. During the stop, the officer, using a device known as a window tint meter, measured the light transmission through appellant's driver side door window and concluded that it did not conform to the standard established under R.C. 4513.241. The trooper cited appellant for both violations.
 {¶ 3} Appellant pled not guilty and, following discovery, moved to exclude test measurements obtained from the window tint meter on the ground of unreliability. The court conducted a hearing on appellant's motion at which the state called the general manager of the manufacturer of the window tint meter used. The company representative testified as an expert witness regarding the manner in which the device, a "Pocket Detective 2.1," worked and the calibration methods employed to ensure its accuracy.
 {¶ 4} In response, appellant attempted to qualify Thomas K. Bailey as an expert witness for purposes of challenging the accuracy of the window tint meter. The trial court refused to qualify him as an expert and ultimately denied appellant's motion. On this ruling, appellant amended his plea to no contest and was found guilty. From this judgment, appellant now brings this appeal.
 {¶ 5} Appellant sets forth the following two assignments of error:
 {¶ 6} "1. The court erred in finding the Pocket Detective 2.1 scientifically reliable.
 {¶ 7} "2. The court erred in failing to admit Thomas K. Bailey as an expert witness."
 {¶ 8} R.C. 4315.241 prohibits the ownership or operation of a motor vehicle equipped with windows containing, "* * * transparent, nontransparent, translucent, and reflectorized materials * * * that prevent a person of normal vision looking into the motor vehicle from seeing or identifying persons or objects inside the motor vehicle. "
 {¶ 9} Authority to establish express rules implementing the statute is delegated to the director of public safety, who promulgated the rules contained in Ohio Admin. Code 4501-41. Ohio Admin. Code 4501-41-03(A)(3) provides, in material part:
 {¶ 10} "(A) No person shall operate, on any highway or other public or private property open to the public for vehicular travel or parking, lease, or rent any motor vehicle that is required to be registered in this state with any sunscreening material, or other product or material which has the effect of making the windshield or windows nontransparent or would alter the windows' color, increase its reflectivity, or reduce its light transmittance, unless the product or material satisfies one of the following exceptions:
 {¶ 11} "* * *
 {¶ 12} "(3) Any sunscreening material or other product or material applied to the side windows to the immediate right or left the driver, so long as such material, when used in conjunction with the safety glazing materials of such windows, has a light transmittance of not less than fifty per cent plus or minus three per cent and is not red or yellow in color."
 {¶ 13} It is the measurement of this standard that appellant sought to challenge. We shall address appellant's second assignment of error first.
 {¶ 14} We have been directed to no Ohio authority in which the Pocket Detective 2.1 has been accepted as a reliable scientific device for measuring light transmittance in automobile windows. Consequently, the burden is on the state to prove the reliability of the device upon which it has based its case. The standard for admissibility of new or novel scientific evidence is, in the first instance, that it is relevant and will assist in determining a fact at issue, State v. Pierce (1992),64 Ohio St.3d 490, 497, and that it be reliable. Evid. R. 702(C);Miller v. Bike Athletic Co. (1998), 80 Ohio St.3d 607, 611. Whether evidence is reliable goes to the validity of the underlying scientific principles, not the correctness of an expert's conclusion. State v.Adams, 103 Ohio St.3d 508, 525, 2004-Ohio-5845, ¶ 85.
 {¶ 15} In evaluating the reliability of scientific evidence, courts are directed to consider: "(1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance." State v. Hartman (2001),93 Ohio St.3d 274, 284, quoting State v. Nemeth (1998), 82 Ohio St.3d 202,211. Both the determination of the admissibility of expert testimony concerning the reliability of a scientific principle or test and the ultimate question of scientific reliability rests in the sound discretion of the court and will not be disturbed absent an abuse of that discretion. Hartman at 285; Pierce at 497. An abuse of discretions occurs only when a court's attitude is arbitrary, unreasonable or unconscionable. State v. Powell (1990), 49 Ohio St.3d 255, 260.
 {¶ 16} Appellant's theory of attack on the Pocket Detective 2.1 was that the regulations underlying his offense define the threshold of lawful transparency as "light transmittance of not less than fifty percent plus or minus three percent." This, appellant insists, means the full spectrum of visible light. Since the light source of the Pocket Detective was a green light emitting diode, the device did not measure the full spectrum of visible light and was, thus, unreliable, according to appellant.
 {¶ 17} For an expert witness to bolster his argument, appellant called Thomas K. Bailey. As Thomas Bailey began to explain the difference in a photocell, such as that used in the Pocket Detective, and a spectrophotometer, the state objected to his testimony as an expert. At this point, appellant responded:
 {¶ 18} "Mr. Bailey: Your Honor, at this point in time we need to have him qualified as an expert witness. As the Court is well aware, the definition of an expert witness is someone who has knowledge based on education or training that is in excess of what the normal layperson knows, and I think he's demonstrated to the Court that he certainly qualifies under the rules of evidence —
 {¶ 19} "Mr. Bailey: — as an expert witness —
 {¶ 20} "(Inaudible due to talking over each other.)
 {¶ 21} "The Court: (Inaudible).
 {¶ 22} "The Witness: Liberal Studies.
 {¶ 23} "The Court: Liberal Studies?
 {¶ 24} "The Witness: Yeah. I also have a degree from the Air Force in the Power Production Field, which is electronics related.
 {¶ 25} "The Court: What university?
 {¶ 26} "The Witness: Bowling Green, and the Air Force Academy; I've got two different degrees —
 {¶ 27} "The Court: The Air Force Academy in what city then?
 {¶ 28} "The Witness: I'm not sure where the Academy comes from, but it was in Texas. I don't recall —
 {¶ 29} "The Court: The Air Force Academy isn't in Texas.
 {¶ 30} "The Witness: Well, not Air Force Officer's Academy. There's different training sites at different locations, and —
 {¶ 31} "The Court: Not the Air Force Academy. I'm asking what university you got your degree from?
 {¶ 32} "The witness: Well, the Air Force Academy is actually an Academy of sorts —
 {¶ 33} "The Court: The Air Force Academy is, but it's not in Texas.
 {¶ 34} "The Witness: I don't know. The degree says the "U.S. Air Force Academy.' They go by — it's considered a college level course that applies — you can transfer it over to colleges."
 {¶ 35} The court then terminated inquiry and requested argument on the question. Following argument, the court denied qualification of Thomas Bailey as an expert.
 {¶ 36} "The Court: Motion to qualify — to designate — or to find him as an expert witness is denied, I don't think that it's even close."
 {¶ 37} After this ruling, appellant proffered Thomas Bailey's report concerning the science of the Pocket Detective 2.1. Included with the report was a summary of the author's qualifications:
 {¶ 38} "A. Training
 {¶ 39} "United States Air Force (Reserve) — Power Production TrainingSchool
 {¶ 40} "Included extensive training in creating and diagnosing circuitry, along with an analysis on the theory of operation of various electronic components. Training on applied physics relative to the use of electronic components and other machinery.
 {¶ 41} "BGSU
 {¶ 42} "Physics, Chemistry and Astronomy courses. Relevant training includes the measurement and properties of light, the use of spectroscopy to determine the composition of unknown materials, and the use of the measurement of extraterrestrial light to determine the elemental composition of distant planets.
 {¶ 43} "United States Air Force (Reserve) — Power Production
 {¶ 44} "4 years experience in creating and diagnosing electronic circuitry
 {¶ 45} "Mack Iron Works Company, Sandusky, Ohio
 {¶ 46} "4 years experience. Worked as the lead programmer for software development. Primary responsibility included working with the company's engineer in developing computer software to perform a large number of physics calculation in the use of strainers in industrial piping. Responsibilities also included the creation of specialized electronic components to interface computer equipment with computer controlled factory machinery, such as lathes and CNC plasma cutters.
 {¶ 47} "Hobby
 {¶ 48} "Have been an electronics hobbyist for over 10 years making electronic devices varying from light activated alarm systems, radios, miniature robots, and other devices."
 {¶ 49} Evid.R. 702(B) defines the qualifications of an expert witness. The rule provides that:
 {¶ 50} "A witness may testify as an expert if all of the following apply:
 {¶ 51} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 52} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 53} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 54} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 55} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 56} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 57} No specific academic experience or special certification is necessary to confer expert status on a witness. State v. Hartman (2001),93 Ohio St.3d 274, 285. Neither is it required that an expert have a complete knowledge of the field in question, "* * * or for that matter, be the best witness on the subject." State v. Scurti,153 Ohio App.3d 183, 190, 2003-Ohio-3286, ¶ 21. The test is whether the witness can aid the trier of fact in performing its factfinding function. Id.;Hartman at 287.
 {¶ 58} In this matter, it appears that the court inserted itself into the expert qualification process, asked questions which elicited little, if any, information relating to the witness's purported expertise, then denied qualification on the basis of those responses. Moreover, examining the qualifications of the witness enumerated in the proffered report reveals some training in the measurement of light and the use of spectroscopy, which the state's own expert witness testified provided the "baseline for calibrating" the company's window tint meter. Thus, in our view, the trial court's denial of appellant's witness's qualifications as an expert was arbitrary and constituted an abuse of discretion. Accordingly, appellant's second assignment of error is well-taken.
 {¶ 59} As our decision concerning appellant's expert witness requires a remand for further proceedings, appellant's first assignment of error is moot.
 {¶ 60} On consideration whereof, the judgment of the Norwalk Municipal Court is reversed. This matter is remanded to said court for further proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Huron County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., Arlene Singer, J., CONCUR.