DECISION AND JUDGMENT ENTRY JUDGMENT ENTRY
{¶ 1} A jury found defendant-appellant Douglas Wood, Sr., guilty of one count of criminal trespass[1] and one count of carrying a concealed weapon.[2] We affirm his convictions.
 {¶ 2} On the morning of March 1, 2003, Portsmouth police officer Stephen Timberlake was on patrol in an area that included Wayne Hills, a public-housing development of the Portsmouth Metropolitan Housing Authority (PMHA). Wayne Hills had signs posted stating "No trespassing." The signs warned that only residents and their guests were allowed to be on PMHA property.
 {¶ 3} Officer Timberlake testified that he drove by Wayne Hills three or four times throughout the morning and each time observed Wood standing on the sidewalk on PMHA property. Timberlake was familiar with Wood and knew that Wood did not live at Wayne Hills. At 10:30 a.m., while Officer Timberlake was watching Wood, he observed a man, McSorely, park a car, get out, and walk over to Wood.
 {¶ 4} Suspecting drug activity, Officer Timberlake approached the two men. The men started to walk away from each other and from Timberlake, but Timberlake ordered them to come to him. The officer asked them why they were at Wayne Hills. Wood said that he was there to visit his girlfriend, who was a resident. McSorely stated that he was looking for a woman named Jennifer who lived there.
 {¶ 5} Timberlake testified that he told Wood that he needed to go to his girlfriend's residence if he intended to visit her, and that he told McSorely that if he did not know whom he was looking for, he should leave. Timberlake testified that he did not search Wood at that time. According to Officer Timberlake, after speaking with the men, Wood walked away, and McSorely got in his car and left.
 {¶ 6} Timberlake followed McSorely away from Wayne Hills. McSorely made several turns and then pulled into the parking lot of a convenience store. Timberlake continued driving around for several minutes and then headed back to Wayne Hills. When he arrived at Wayne Hills, Timberlake saw Wood and McSorely together again, standing at approximately the same location as before.
 {¶ 7} Officer Timberlake told Wood that he was under arrest for criminal trespass. Timberlake asked Wood if he had any weapons on him, and Wood volunteered that he had a club. Out of his sleeve, Wood pulled an axe handle that was about eighteen inches long.
 {¶ 8} In contrast to Officer Timberlake's testimony, Danita Frazee, an acquaintance of Wood who was visiting her father at Wayne Hills that morning, testified that Timberlake searched Wood the first time he spoke to him. Frazee testified that Timberlake found the club and then left with it. According to her, Timberlake returned five minutes later, and then, several minutes after that, another officer arrived and arrested Wood.
 {¶ 9} Wood testified that the first time Timberlake spoke to him, Timberlake searched him and took his club. Wood testified that he asked Timberlake how he could get his club back, and Timberlake replied that he could get it back only if he was charged with carrying a concealed weapon. According to Wood, Timberlake left with the club, but then came back three minutes later and arrested him.
 {¶ 10} Wood moved to suppress any evidence obtained from the search, arguing that the two investigative stops made by Timberlake violated his Fourth Amendment rights. The trial court denied Wood's motion, and a jury found Wood guilty of both charges.
 {¶ 11} The trial court then sentenced Wood to sixty days in the county jail, suspended, $300 and costs, and one year of probation for the concealed-weapon charge. For the criminal-trespass charge, the court sentenced Wood to thirty days in the county jail, suspended, $100 and costs, and one year of probation. In addition, as a condition of his probation, the court ordered that Wood not be permitted to return to PMHA property.
I. Constitutional Rights
 {¶ 12} In his first assignment of error, Wood contends that his detention and arrest for criminal trespass was an unconstitutional infringement of his right to freedom of association under the First Amendment and an unconstitutional infringement of his right to freedom of movement in intrastate travel in violation of the Fourteenth Amendment.
 {¶ 13} Wood was convicted for criminal trespass under R.C.2911.21(A)(1), which states, "No person, without privilege to do so, shall do any of the following: (1) Knowingly enter or remain on the land or premises of another." It is well established that a trespass can occur on public land[3] The criminal-trespass statute also specifically notes, "It is no defense to a charge under this section that the land or premises involved was owned, controlled, or in custody of a public agency."[4]
 {¶ 14} Though it is not clear from his brief, Wood is apparently arguing not that the criminal-trespass statute is unconstitutional on its face, but that it is unconstitutional as applied to him. Wood apparently argues that he has an absolute right to travel and move about without regard to the conflicting rights of property owners to prohibit his presence on their property.[5] This argument clearly has no merit.
 {¶ 15} To support his argument, Wood cites two cases, one by the Ohio Supreme Court and the other by the United States Sixth Circuit Court of Appeals. Both courts held a Cincinnati ordinance unconstitutional for excluding from "public streets, sidewalks, and other public ways" individuals who had been arrested or taken into custody for drug offenses within drug-exclusion zones in the city.[6]
 {¶ 16} But Wood's reliance on these two cases is misplaced. Both of the courts held that the municipal ordinance was not narrowly tailored to achieve its stated purpose, that is, to reduce illegal drug activity. The courts held that the ordinance impermissibly restricted a substantial amount of innocent conduct.
 {¶ 17} There is no such problem with the criminal-trespass statute. A statute is narrowly tailored if it targets and eliminates no more than the exact source of the wrong it seeks to remedy.[7] Under the criminal-trespass statute, an individual is subject to criminal liability only when the individual makes an unauthorized entry onto the property of another.
 {¶ 18} Therefore, we conclude that the criminal-trespass statute is not unconstitutional either on its face or as applied to Wood. Accordingly, we overrule his first assignment of error.
II. Motion to Suppress
 {¶ 19} Wood next argues that the trial court improperly denied his motion to suppress. In his second and third assignments of error, Wood contends that the state did not establish that Timberlake had probable cause to search him, and that the search violated his Fourth Amendment rights.
 {¶ 20} When considering a ruling on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.[8] But it then must independently determine, without deference to the trial court, whether the facts satisfy the applicable legal standard.[9]
 {¶ 21} Officer Timberlake testified that he observed Wood, who he knew did not live in Wayne Hills, standing on Wayne Hills property. Signs were posted on Wayne Hills property that only residents and guests were allowed on the property. The trial court found that Wood "was already on PMHA property and doesn't live there and that is evidence of a crime."
 {¶ 22} We are persuaded that the record supports the trial court's factual findings, and we conclude that Officer Timberlake had probable cause to stop, arrest, and search Wood. Timberlake was also entitled to search Wood incident to Wood's arrest. Because the stop and the search were lawful, Wood's Fourth Amendment rights were not violated, and the trial court properly denied Wood's motion to suppress. Therefore, we overrule Wood's second and third assignments of error.
III. Sufficiency
 {¶ 23} In his fourth and fifth assignments of error, Wood argues that the state failed to present sufficient evidence to support his convictions. Whether the evidence is legally sufficient to sustain a verdict is a question of law.[10]
We must determine whether any rational factfinder could have found the essential elements of the crime proved beyond a reasonable doubt.[11] We must view the evidence in a light most favorable to the state, meaning in this case that we must accept the version of events given by Officer Timberlake.[12]
 {¶ 24} The criminal-trespass statute states, "No person, without privilege to do so, shall do any of the following: (1) Knowingly enter or remain on the land or premises of another."[13] The statute for carrying a concealed weapon states, "No person shall knowingly carry or have, concealed on his or her person or concealed ready at hand, any deadly weapon or dangerous ordnance."[14]
 {¶ 25} Wood specifically argues that the state did not prove that he was on Wayne Hills property "without privilege." The trial court instructed the jury that "[p]rivilege means an immunity, license, or right by law." Wood argues that numerous family members and his girlfriend resided in Wayne Hills, and that the state did not prove that he did not have a legitimate reason for being there.
 {¶ 26} Officer Timberlake testified that he observed Wood standing on Wayne Hills property several times that morning. The first time that Timberlake spoke to Wood, Wood explained that he was visiting his girlfriend. Timberlake advised Wood that he needed to go to his girlfriend's residence to visit her. Five minutes later, Timberlake again observed Wood standing on the sidewalk close to where he had been before.
 {¶ 27} We conclude that a rational factfinder could have found that Wood was not there to visit his girlfriend, or any other family members, and that, therefore, Wood was on the property without privilege. We also conclude that a rational factfinder could have found that the state had proved the remaining essential elements of the offense of criminal trespass.
 {¶ 28} Timberlake testified that he told Wood that he was under arrest and asked him if he had any weapons. Timberlake testified that Wood stated that he had a club and pulled an eighteen-inch-long axe handle out of his sleeve. We conclude that a rational factfinder could have found Wood guilty of carrying a concealed weapon.
 {¶ 29} Therefore, Wood's convictions were not based on insufficient evidence, and we overrule his fourth and fifth assignments of error.
IV. Probation
 {¶ 30} In his sixth assignment of error, Wood argues that his constitutional rights were violated by the probation condition prohibiting him from entering PMHA property.
 {¶ 31} A trial court may impose requirements on an offender as a condition of probation "in the interests of doing justice, rehabilitating the offender, and ensuring the offender's good behavior."[15] A trial court has broad discretion in setting conditions of probation.[16] In determining whether a condition of probation is related to the "interests of doing justice, rehabilitating the offender, and ensuring the offender's good behavior," courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation.[17]
 {¶ 32} The trial court sentenced Wood to one year of probation and, as a condition of probation, ordered that Wood not be permitted to return to PMHA property. Because Wood was convicted of criminal trespass for being on PMHA property, we conclude that barring him from PMHA property certainly related to the crime committed, related to rehabilitating Wood, related to future criminality, and served the statutory ends of probation. Therefore, we hold that Wood's probation requirements did not violate his constitutional rights, and we overrule his sixth assignment of error.
 {¶ 33} Because we have overruled all six of Wood's assignments of error, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
It is ordered that the judgment be affirmed and that appellee recover costs from appellant.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Portsmouth Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Kline, P.J. and Abele, J.: Concur in Judgment and Opinion.
Mark J. Painter, Judge of the First District Court of Appeals, sitting by assignment.
[1] R.C. 2911.21.
[2] R.C. 2923.12.
[3] See Adderley v. Florida (1966), 385 U.S. 39,87 S.Ct. 242.
[4] R.C. 2911.21(B).
[5] See Warren v. Owens (June 27, 1997), 11th Dist. No. 96-T-5480.
[6] See State v. Burnett, 93 Ohio St.3d 419, 2001-Ohio-1581,755 N.E.2d 857; Johnson v. Cincinnati (C.A. 6, 2002),310 F.3d 484.
[7] See State v. Burnett, supra, at 429.
[8] See State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.
[9] Id.
[10] See State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, 678 N.E.2d 541.
[11] See State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
[12] Id.
[13] R.C. 2911.21(A)(1).
[14] R.C. 2923.12(A).
[15] R.C. 2929.25(B)(2).
[16] See State v. Jones (1990), 49 Ohio St.3d 51, 52,550 N.E.2d 469.
[17] Id. at 53.