OPINION
The State appeals from the trial court's order granting the motion to suppress of Defendant, Charles Carpenter, Jr.
In the early morning of August 4, 2006, Dayton Police Officer James Baker responded to a call of a burglary in progress at a residence. When Officer Baker arrived at the *Page 2 
scene, Officer Priest and Officer Phillips were waiting in the driveway. The officers knocked on the door and were allowed to enter the residence. Carpenter and another male were inside the house. The officers placed both men in handcuffs and seated them separately on a love seat and a couch.
Officer Priest watched the two men while Officer Baker searched the rest of the residence to ensure that no other persons were present. During his search, Officer Baker found crack cocaine near a lamp on the kitchen table. After speaking with the other two officers, Officer Baker performed a pat down search on Carpenter and the other male. Officer Baker felt a large bulge in Carpenter's front right pants pocket. According to Officer Baker, he could not determine from his pat down whether Carpenter had a weapon in his pants pocket.
Officer Baker proceeded to put his hand in Carpenter's pocket and remove one item at a time. His search produced a cell phone, keys, paper money, a large amount of coins, and a couple of loose pieces of crack cocaine. The officers arrested Carpenter for possession of the drugs found in his pocket. Carpenter was not arrested or charged in connection with the drugs on the kitchen table.
On September 29, 2006, Carpenter was indicted by the *Page 3 
grand jury on one count of possession of crack cocaine in an amount less than one gram, a felony of the fifth degree, in violation of R.C.2925.11(A). Carpenter filed a motion to suppress evidence. Following a hearing, the trial court sustained the motion to suppress. The State filed a timely Crim. R. 12(K) certification and notice of appeal.
ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN SUSTAINING CARPENTER'S MOTION TO SUPPRESS AS OFFICER BAKER'S SEARCH OF CARPENTER'S POCKET FOR A WEAPON WAS LAWFUL."
"Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. . . . Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. . . . Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, _8 (citations omitted).
Carpenter was handcuffed shortly after the police officers first arrived at the residence. After a search of *Page 4 
the residence revealed the presence of drugs on the kitchen table, Officer Baker decided to pat down the two suspects in order to ensure officer safety, because in Officer Baker's experience where there are drugs, there are weapons. The trial court found that Officer Baker's pat down of Carpenter was justified under Terry v. Ohio (1968), 392 U.S. 1,88 S. Ct. 1868, 20 L.Ed.2d 889.
We are somewhat troubled by the trial court's holding that the pat down was justified. As we recently explained in State v. Page, Montgomery App. No. 21638, 2007-Ohio-671, _87: "While the officers appear to have been justified in detaining [the suspects] to investigate their suspicious behavior, Terry, 392 U.S. at 22, we perceive no basis from our review for a frisk of weapons. The officers pointed to nothing that would support a reasonable suspicion that [defendant] was armed and dangerous. Indeed, their policy seemed to be to ask no questions upon approaching a suspect, but, rather, to immediately handcuff the suspect and frisk him. [The deputy]'s generalization associating narcotics with guns and saying [defendant] might have had a weapon did not demonstrate a justifiable belief that [defendant] was armed and presently dangerous. Id. at 24."
We find it unnecessary, however, to delve too far into whether the pat down was justified, because the trial court *Page 5 
correctly found that the search of Carpenter's pants pocket for a weapon should have ended once the large, hard objects were removed from Carpenter's pockets. At the hearing on the motion to suppress, Officer Baker testified as follows on direct examination regarding the pat down search of Carpenter:
 "Q Regarding Mr. Carpenter specifically, can you explain to us how you did your patdown?
 "A Yeah. I just asked him if he had anything on him that was going to hurt me or anything I should know about. I don't even think he replied. He actually was quiet during the incident for the most part. I felt on his right front pocket a large bulge. I wasn't sure what was there at the time, if there was a weapon or not. I couldn't tell just by patting the out — the outer garment.
 I then went into his pocket where I retrieved a large amount of — I don't — I don't remember the dollar amount, but a large amount of change, some money, a cell phone; and then as I pulled all of that out, that's when I found crack cocaine in his right front pocket also.
 "Q Now, you said that you — when you felt his pocket, you felt a bulge. Can you describe for us what that bulge *Page 6 
felt like?
 "A Maybe an inch or so or halfway between an inch off of his — off of his leg pressing against his outer pants and approximately as big around as what your hand would be.
 "Q Were you, based on just feeling his outer clothing, able to determine what any of the contents of that pocket were?
 "A No. Not at all.
 "Q Were you able to at that point rule out whether or not there was a weapon in that pocket?
 "A No, I wasn't. I wasn't sure. I couldn't feel what was pressed against the outer pants, that there was no weapon, but I didn't know if there was anything behind that which would be between whatever was in his pocket and against his leg."
December 15, 2006 Motion to Suppress Hearing, pp. 10-11.
On cross-examination, Officer Baker reiterated that his patdown of Carpenter did not exclude suspicion of a weapon:
 "Q And you did a patdown, you felt a bulge. I think it was in a — was it a pants pocket or jacket or what?
 "A It was in a right front pants pocket.
 "Q Pants pocket. I think you testified you couldn't tell what that was? *Page 7 
 "A No.
 "Q It was not readily apparent to you that it was a weapon though, correct?
 "A Correct.
 "Q It was not readily apparent that it was drugs or other ?
 "A I couldn't tell if there was a gun or a knife or anything ?
 "Q You didn't know what it was.
 "A I didn't know.
 "Q Okay. You didn't know what it was.
 "A Right.
 "Q And when you could not immediately identify it, you reached in to find out what was in there.
 "A Correct."
Id. at 21-22.
Assuming that a Terry pat down was justified, Officer Baker's testimony appears to be sufficient to warrant a limited search of Carpenter's front right pants pocket to determine whether the hard object producing the bulge was a weapon. "A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. . . . Thus, it must be limited to that which is *Page 8 
necessary for the discovery of weapons which might be used to harm the officer or others nearby. . . ." Terry, 392 U.S. at 25-26. "The protective pat down under Terry is limited in scope to this protective purpose and cannot be employed by the searching officer to search for evidence of crime." State v. Evans, 67 Ohio St.3d 405, at 414,1993-Ohio-186, ¶ 11. (citation omitted). "Obviously, once the officer determines from his sense of touch that an object is not a weapon, the pat-down frisk must stop. The officer, having satisfied himself or herself that the suspect has no weapon, is not justified in employingTerry as a pretext for a search for contraband." Evans,67 Ohio St.3d at 414, 1993-Ohio-186, ¶ 11.
At the suppression hearing, Officer Baker explained his removal of items from Carpenter's pants pocket:
 "Q And when you could not immediately identify it, you reached in to find out what was in there.
 "A Correct.
 "Q And I think you mentioned several items, a cell phone, keys — what all — what all do you —
 "A A cell phone, a large amount of change, bills — money — and there may have been a set of keys there also.
 "* * *
 "Q Sir, did you reach in and pull the stuff all out at once *Page 9 
or did you pull one thing at a time?
 "A Just one thing at a time. There was just so much in there, I can't — like I said, I can't recall the amount of change, but there was a lot of loose change and then the money and like I stated, I'm not sure, but I believe there was a set of car keys and I know there was a cell phone.
 "Q Was the crack the last thing that came out or did — I mean, how did you find the crack?
 "A The crack was loose in his pocket and I can't recall the weight. I'd have to look at the report, but there were, I believe, there were two small pieces that came out at that time. And where he was sitting, I laid everything as I took it out on the table directly in front of him.
 "Q Did you take the crack out by itself and it —
 "A No. There were just — there were just loose pieces.
 "Q But, I mean, did it come out with the change? Did —
 "A It came out with the change." Hearing, pp. 22-23.
Upon this record, we find that there was some competent, credible evidence to support the trial court's finding that Officer Baker removed the large, hard objects from Carpenter's pockets prior to discovering the drugs. Once the cell phone, keys, and cash were removed from Carpenter's pocket, leaving only the loose change and drugs, Officer Baker no longer could *Page 10 
have had a reasonable suspicion that Carpenter had a weapon in his pants pocket. Therefore, because the protective purpose of the search had been satisfied, the search should have stopped prior to the discovery of the drugs. Evans, 67 Ohio St.3d at 414.
The assignment of error is overruled. The judgment of the trial court will be affirmed.
 Fain, J. and Donovan, J., concur. *Page 1