{¶ 1} The State of Ohio ("State") appeals from the trial court's decision to suppress a crack cocaine pipe seized from Samantha Daugherty ("Daugherty") on September 13, 2006. The State claims the detective who seized drug paraphernalia from Daugherty's back pocket acted within the parameters of the Fourth Amendment. Therefore, the State argues the trial court erred when it suppressed the evidence. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} On September 13, 2006, Detective William Vanverth ("Detective Vanverth") and Detective Todd Staimpel ("Detective Staimpel") performed an investigation of the area of West 78th Street and Lorain Avenue in Cleveland, Ohio. Detective Vanverth stated that this area was known as a high-crime area and had been designated as part of the Federal Weed and Seed Program. As part of that program, the detectives were in the area, monitoring for crime.
 {¶ 3} On that day, at approximately noon, the detectives observed Daugherty standing on the corner of West 78th Street and Lorain Avenue, waving to passing cars. Detective Vanverth watched Daugherty for approximately five minutes and noted that she looked at each passing car and waved. Based on their experience, the detectives believed Daugherty was engaging in prostitution activity. The detectives warned Daugherty and told her to move from the area.
 {¶ 4} A short time later, the detectives returned to West 78th Street and Lorain Avenue and saw Daugherty engaging in the same activity. The detectives *Page 4 
approached Daugherty, exited their vehicle, and told her to come over to their vehicle. Daugherty said "no, no" and then began walking backwards from the detectives. Detective Vanverth immediately grabbed Daugherty, who briefly struggled and continued to try to walk backwards from the detectives. As a result of Daugherty's actions, Detective Vanverth believed that she might be armed.
 {¶ 5} Detective Vanverth conducted a pat-down search of Daugherty, using the back of his hand. Detective Vanverth specifically stated that he conducted the search to protect himself and Detective Staimpel from any weapon Daugherty might have. During the pat-down, Detective Vanverth felt a hard object in her back pocket. Detective Vanverth described the object as hard, and that it was the size of a pen or pencil.
 {¶ 6} However, Detective Vanverth could not tell what the object was and stated that he did not know whether it was a weapon, or a crack cocaine pipe. Detective Vanverth asked Daugherty what the object was, but did not receive an answer. It was only after Detective Vanverth removed the object from Daugherty's rear left jeans pocket, that he could identify it as a crack cocaine pipe. The detectives then placed Daugherty under arrest.
 {¶ 7} On October 20, 2006, the Cuyahoga County Grand Jury returned an indictment charging Daugherty with one count of drug possession. Prior to trial, Daugherty filed a motion to suppress, arguing that Detectives Staimpel and Vanverth did not have a reasonable basis for conducting an investigatory stop, nor did they *Page 5 
have the authority to pat-down her person and seize the contraband from her jeans pocket. On November 27, 2006, the trial court conducted a hearing on the motion; Detectives Staimpel and Vanverth testified. On January 25, 2007, the trial court granted the motion to suppress. The State filed the instant appeal, raising a single assignment of error.
 "The trial court erred in granting the appellee's motion to suppress evidence."
 {¶ 8} In State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, the Ohio Supreme Court addressed appellate review of a motion to suppress:
 "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. (Internal citations omitted.)
 "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citation omitted.)
 {¶ 9} Therefore, the application of the law to those facts is subject to de novo review. State v. Goins (Oct. 22, 1998), Franklin App. No. 98AP-266.
 {¶ 10} In granting the motion to suppress, the trial court concluded that the detectives possessed reasonable suspicion to conduct an investigatory stop of Daugherty. The trial court based this determination on the fact that the detectives knew the area had a high crime rate, they had seen Daugherty wave to passing *Page 6 
vehicles and that her actions were consistent with what they knew to be prostitution activity.
 {¶ 11} In addition, the trial court also determined that Detective Vanverth was justified in conducting the limited pat-down search of the outer layer of her clothing. This conclusion was based on the fact that Daugherty attempted to walk away from the detectives and struggled when Detective Vanverth apprehended her.
 {¶ 12} However, the trial court concluded that Detective Vanverth did not have the authority to remove the crack cocaine pipe from her jeans pocket because it was not immediately apparent that the object was contraband. Before making its ruling, the trial court engaged in the following dialogue with the State and defense counsel:
 "Court: But we can agree that the item that was contained in the evidence bag, was approximately two inches long?
 Mr. Agopian: Right.
 Court: And approximately about the diameter or circumference of a pencil. Is that a fair statement on behalf of the State?
 Mr. Brockler: That's a fair statement.
 Court: Okay. How about the defense?
 Mr. Agopian: That's fair."
 {¶ 13} The trial court then determined that both the stop and frisk were valid but that the seizure of the contraband went beyond the scope of a permissible search. The trial court concluded as follows: *Page 7 
 "That he came upon a hard object in the rear pocket of the pants of the defendant. And that he was not sure what it was until he took it out. I mean, he did not know it to be a weapon, because of the size of it clearly. His description was that it was a hard object.
 "And he did not indicate on the record that he believed it immediately to be contraband. And as a result of that, he was not able to confirm what it was."
 {¶ 14} It is from this conclusion that the State appeals.
 {¶ 15} In Minnesota v. Dickerson (1993), 508 U.S. 366, 113 S.Ct. 2130, the United States Supreme Court affirmed what has come to be known as the "plain feel" exception to the requirements of the Fourth Amendment to the United States Constitution. In re Coleman (Dec. 30, 1993), Cuyahoga App. No. 65459. In State v. Evans, 67 Ohio St.3d. 405, 414, 1993-Ohio-186, the Ohio Supreme Court distinguished Dickerson, and held as follows:
 "Dickerson answered the question whether police may enter a suspect's pockets during the course of a Terry patdown on the basis of something other than a belief that the individual is carrying a weapon. Drawing an analogy to the plain view doctrine, the court held that police, conducting a lawful Terry-type search, may seize nonthreatening contraband when its incriminating nature is "immediately apparent" to the searching officer through his sense of touch. * * * In other words, the officer may not manipulate the object, which he has previously determined not to be a weapon, in order to ascertain its incriminating nature."
 {¶ 16} The court further stated in Evans, supra at 414-415, as follows:
 "Obviously, once the officer determines from his sense of touch that an object is not a weapon, the pat-down frisk must stop * * * The specific question raised * * * concerns what future actions are permissible under Terry if the searching officer is unable to determine from the patdown that the suspect is not carrying a weapon." (Footnote omitted.) *Page 8 
 "In answering this question, it is important first to emphasize that Terry does not require that the officer be absolutely convinced that the object he feels is a weapon before grounds exist to remove the object. At the same time, a hunch or inarticulable suspicion that the object is a weapon of some sort will not provide a sufficient basis to uphold a further intrusion into the clothing of a suspect. When an officer removes an object that is not a weapon, the proper question to ask is whether that officer reasonably believed, due to the object's `size or density,' that it could be a weapon." 3 LaFave, Search and Seizure (2 Ed.1987) 521, § 9.4(c).
 `Under the better view, then, a search is not permissible when the object felt is soft in nature. If the object felt is hard, then the question is whether its `size or density' is such that it might be a weapon. But because `weapons are not always of an easily discernible shape,' it is not inevitably essential that the officer feel the outline of a pistol or something of that nature. Somewhat more leeway must be allowed upon `the feeling of a hard object of substantial size, the precise shape or nature of which is not discernible through outer clothing,' which is most likely to occur when the suspect is wearing heavy clothing.'" Evans, 67 Ohio St.3d at 415, quoting LaFave, Search and Seizure, supra, at 523.
 {¶ 17} In the instant case, Detective Vanverth testified as to his specific actions:
 "Q. Okay. And what did your pat-down reveal, what did you feel?
 A. I felt a hard object that I believe was in the left, rear pocket according to my notes.
 Q. What did the object feel like, not in terms of what it was?
 A. I really couldn't tell. It was just a hard object in the rear pocket."
 {¶ 18} On cross-examination, Detective Vanverth testified as follows:
 "Q. Detective, you indicated to the prosecutor that you conducted a pat-down at some point in the rear pocket, and that you felt a hard object, but you couldn't tell what it was. Do you recall saying that? *Page 9 
 A. That's correct.
 Q. Okay. So, it was not readily apparent to you that it was a weapon, correct?
 A. It wasn't readily apparent that it wasn't either.
 Q. Okay. It wasn't readily apparent that it was a weapon correct?
 A. I didn't know what it was at the time when I did the pat-down.
 The Court. He is emphasizing readily apparent. Was it obvious?
 A. It wasn't obvious to me.
 Q. It wasn't obvious to you that it was a weapon. Was it obvious to you that it was a crack pipe?
 A. That's correct.
 Q. And that's why you had to say to Ms. Daugherty, what is it?
 A. Basically.
 Q. You wouldn't have said, what is it if you knew what it was, correct?
 A. Yes."
 {¶ 19} In the present case, because Detective Vanverty did not immediately identify the object as contraband, we therefore conclude that his seizure of the contraband went beyond the limits ofTerry as propounded in Dickerson, supra, and Evans, supra. *Page 10 
 {¶ 20} Detective Vanverth clearly stated in his testimony at the suppression hearing that the object he felt in Daugherty's pocket was "small * * * probably the size of a pen, or maybe a pencil." The trial court later confirmed from the parties that the object was approximately two inches long with the diameter of a pen or a pencil. While the detective stated that he had a hunch that the object was a crack cocaine pipe, he testified numerous times that he was not sure what the object was. The limits of Evans, supra, and Dickerson, supra were clearly exceeded by Detective Vanverth's search and seizure.
 {¶ 21} In In re Coleman, supra, this appellate court determined that officers are required to think about the identity and nature of the object they feel. The court determined that the officer exceeded the scope of his search when he felt a small, hard object that could have been almost anything.
 {¶ 22} The facts of In re Coleman, are similar to this case. Detective Vanverth could not readily identify the object in Daugherty's back pocket as contraband. Accordingly, we agree with the trial court that Detective Vanverth exceeded the scope of his search when he seized the crack cocaine pipe from Daugherty's back pocket.
 {¶ 23} The State's sole assignment of error is overruled.
 {¶ 24} The judgment of the trial court is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 11 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ANTHONY O. CALABRESE, JR., P.J., and KENNETH A. ROCCO, J., CONCUR. *Page 1