[Cite as *State v. Lewis*, 2011-Ohio-5967.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | |
|---|---|
| STATE OF OHIO | : |
| | :      Appellate Case No. 24271 |
|      Plaintiff-Appellee | : |
| | :      Trial Court Case No. 2009-CR-1538 |
| v. | : |
| | :      (Criminal Appeal from |
| THERON E. LEWIS | :    Common Pleas Court) |
| | : |
|      Defendant-Appellant | : |
| | : |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of November, 2011.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. #0061560, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellee

JEFFREY T. GRAMZA, Atty. Reg. #0053392, Talbott Tower, Suite 1210, 131 North Ludlow Street, Dayton, Ohio 45402
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

KLINE, J. (sitting by assignment)

{¶ 1} Theron Everett Lewis (hereinafter "Lewis") appeals the judgment of the Montgomery County Court of Common Pleas, which found him guilty of various crimes related to a shooting. On appeal, Lewis argues that the trial court should have suppressed the identification testimony of two witnesses. Because the

identification process was not unnecessarily suggestive, we disagree. Accordingly, we overrule Lewis's assignment of error and affirm the judgment of the trial court.

I

{¶ 2}  On May 11, 2009, a shooting took place at a church. After the shooting, Detective Daryl Smith (hereinafter "Detective Smith") interviewed Witness One at the Safety Building. Witness One did not know who the shooter was, but he said that the shooter "had on a kind of like a jacket with a hoodie on it." Transcript at 37.

{¶ 3}  After interviewing Witness One, Detective Smith learned that Lewis might be involved in the shooting. Detective Smith shared this information with Detective Gregory Gaier (hereinafter "Detective Gaier"). Coincidentally, Detective Gaier had compiled a photo array while investigating Lewis's involvement in an unrelated crime. The photo array compiled by Detective Gaier includes six photographs of young African-American males, with Lewis's photograph in the third position. In the photo array, Lewis appears to be wearing some type of jacket or bulkier clothing. The other five men, however, appear to be wearing t-shirts. Detective Gaier gave copies of this photo array to Detective Smith for use in the shooting investigation.

{¶ 4}  On May 12, 2009, Detective Smith showed the photo array to Witness One. Within five seconds, Witness One identified Lewis as the shooter. Upon further questioning, Witness One claimed that he did not know Lewis before the shooting.

{¶ 5}   On May 13, 2009, Detective Smith made his initial contact with Witness Two.   During this initial interview, Detective Smith showed Witness Two the photo array.   Within five seconds, Witness Two identified Lewis as the shooter.   Upon further questioning, Witness Two also claimed that he did not know Lewis before the shooting.

{¶ 6}   After interviewing Witnesses One and Two, Detective Smith compiled a new photo array for use in the investigation.   As before, the newer photo array includes six photographs of young African American males.   But unlike before, the newer photo array includes (1) Lewis's photograph in the fourth position and (2) a more recent picture of Lewis wearing a t-shirt.

{¶ 7}   On June 8, 2009, Detective Smith interviewed Witness Three at the Montgomery County Jail.   During this interview, Detective Smith showed Witness Three the newer photo array.   Within ten seconds, Witness Three identified Lewis as the shooter.

{¶ 8}   On June 15, 2009, a Montgomery County Grand Jury indicted Lewis for numerous crimes related to the shooting.

{¶ 9}   On February 16, 2010, Lewis filed a motion to suppress any identification testimony.   Lewis claimed, in part, that Detective Smith's identification procedures were unduly suggestive.   After a suppression hearing, however, the trial court overruled Lewis's motion.

{¶ 10} Eventually, Lewis pled no contest to four counts of felonious assault, one count of discharge of a firearm on or near prohibited premises, and one count of having weapons while under disability.   After accepting Lewis's no-contest pleas, the

trial court found him guilty of all six crimes and sentenced him accordingly.

{¶ 11} Lewis appeals and asserts the following assignment of error:

{¶ 12} "THE IDENTIFICATION OF APPELLANT BY GOVERNMENT WITNESSES [WITNESS ONE] AND [WITNESS TWO] AROSE FROM PHOTOGRAPHIC LINEUPS THAT WERE UNDULY SUGGESTIVE AND VIOLATED APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS."

II

{¶ 13} In his sole assignment of error, Lewis contends that the trial court should have suppressed the identification testimony of Witness One and Witness Two.

{¶ 14} As the Supreme Court of Ohio has held, "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. * * * Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶8 (citations omitted). See, also, *State v. D'Allesandris*, Greene App. No. 23889, 2011-Ohio-1126, at ¶13.

{¶ 15} We "apply a two-prong test in determining the admissibility of challenged identification testimony. First, the defendant bears the burden of demonstrating that the identification procedure was unnecessarily suggestive. If this

burden is met, the court must then consider whether the procedure was so unduly suggestive as to give rise to irreparable mistaken identification." *State v. Robinson*, Cuyahoga App. No. 94293, 2010-Ohio-5776, at ¶14, citing *State v. Page*, Cuyahoga App. No. 84341, 2005-Ohio-1493, at ¶12; *Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140.

{¶ 16} "When an eyewitness to a crime is shown a series of photographs in an effort to identify a perpetrator, and the manner or mode of the presentation suggests that one individual is more likely than the others to be the perpetrator -- such as when the photograph of one individual is in some way emphasized -- undue suggestion may occur, increasing the likelihood of misidentification and violating the due process rights of a defendant so identified. * * * Identification testimony tainted by an unduly suggestive out-of-court identification procedure may be suppressed. However, even if an identification procedure is unduly suggestive, the identification testimony derived therefrom is not per se inadmissible solely for that reason. Reliability of the identification is the linchpin in determining its admissibility. * * * As long as the identification itself is reliable, it is admissible despite the suggestive nature of the identification procedure. * * * Reliability is determined from the 'totality of the circumstances,' which includes the witness' opportunity to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated, and the time between the crime and the identification procedure." *State v. Robinson* (Jan. 26, 2001), Montgomery App. No. 17393 (internal citations omitted). See, also, *Neil v. Biggers* (1972), 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401; *State v. Gales*,

Montgomery App. No. 24059, 2011-Ohio-2682, at ¶60.

III

{¶ 17} Initially, Lewis advances an argument based on the photo array compiled by Detective Gaier. At the crime scene, witnesses said that the shooter wore a hoodie. And in the photo array compiled by Detective Gaier, Lewis claims that he is the only person wearing a hoodie. For these reasons, Lewis argues that the hoodie in the photo array caused Witness One and Witness Two to identify Lewis as the shooter. In other words, Lewis argues that the photo array was unduly suggestive. For the following reasons, we disagree.

{¶ 18} Even though witnesses said that the shooter wore a hoodie, we find that the photo array was not unduly suggestive. First, all of the men in the photo array share several important characteristics -- that is, they all appear to be young African Americans with short hair and some facial hair. Furthermore, after examining the photo array, we agree with the state that, "[a]lthough Lewis appears to be wearing a jacket of some sort in Exhibits 1 and 2, no hood is visible in the photo. Thus, while Lewis appears to be wearing layers or bulkier clothing than the other five men depicted in the array, it is not obvious that he is wearing a hoodie." Brief of The State of Ohio, Appellee at 4-5. Because there is no hood visible in the photograph, there was no suggestion that Lewis was more likely to be the perpetrator.

IV

{¶ 19} Next, Lewis advances an argument based solely on Witness One. According to Lewis, Witness One had reason to believe that the suspect's picture

was included in the photo array.   For that reason, Lewis argues that the identification process related to Witness One was unduly suggestive.   We, however, find no merit in this argument.

{¶ 20} At the suppression hearing, Detective Smith was cross-examined about his interactions with Witness One.   Lewis claims that the following testimony demonstrates undue suggestion:

{¶ 21} "Q. And how long did you interview [Witness One] at the Safety Building the day before?

{¶ 22} "A. Maybe 20 minutes.

{¶ 23} "Q. Okay.   And after you let [Witness One] go on that particular day or he went home, did you tell him you'd be coming the next day with a photo spread for him to look at?

{¶ 24} "A. No, but I told him I would try to find out who this was and get back with him with a photo spread.

{¶ 25} "Q. Okay.   In other words, you told [Witness One] that you were looking for a suspect and after you [were] able to locate one, you would be back with him.   So, based on that, he could really assume that if you showed him a photo spread that most likely somebody in that photo spread was who you had decided may be responsible for this crime; would that be a fair assumption?

{¶ 26} "A. No.   I mean, that's up to him.

{¶ 27} "Q. I understand, but would that be a fair assumption?

{¶ 28} "A. Yeah, maybe.   Yeah."   Transcript at 44-45.

{¶ 29} Even if Witness One could have assumed that the photo array included

a picture of the suspect, we find that the identification process was not unduly suggestive. We base this finding on the mitigating instructions that Detective Smith gave to Witness One. Before showing Witness One the photo array, Detective Smith said, "I am going to show you a group of photographs. This group of photographs *may or may not contain* a picture of the person who committed the crime now being investigated." Photographic Show-Up Instructions (Emphasis added.) In our view, this statement mitigated any assumptions that Witness One might have had before he saw the photo array.

V

{¶ 30} For the foregoing reasons, we find that the identification process was not unnecessarily suggestive. As a result, we need not address the second prong of the identification-testimony test (the reliability prong). Accordingly, we overrule Lewis's assignment of error and affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

. . . . . . . . . . . . .

GRADY, P.J., and FAIN, J., concur.

(Hon. Roger L. Kline, Fourth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Mathias H. Heck
R. Lynn Nothstine
Jeffrey T. Gramza
Hon. Frances E. McGee