[Cite as *State v. Johnson*, 2013-Ohio-4729.]

IN THE COURT OF APPEALS FOR MIAMI COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2012 CA 22 |
| v. | : | T.C. NO. 12CR200 |
| ISHMAIL A. JOHNSON | : | (Criminal appeal from Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____25th____ day of ____October____, 2013.

. . . . . . . . . .

ROBERT E. LONG III, Atty. Reg. No. 0066796, Assistant Prosecuting Attorney, 201 West Main Street, Safety Bldg., Troy, Ohio 45373
      Attorney for Plaintiff-Appellee

J. ALLEN WILMES, Atty. Reg. No. 0012093, 4428 N. Dixie Drive, Dayton, Ohio 45414
      Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1} After the trial court overruled his motion to suppress evidence, Ishmail A. Johnson pled no contest to carrying a concealed weapon, receiving stolen property, and having weapons while under disability. He was found guilty on each count and was sentenced to an aggregate term of 18 months in prison. Johnson appeals from his convictions.

**{¶ 2}** For the following reasons, the judgment of the trial court will be affirmed.

**{¶ 3}** The State's evidence at the suppression hearing established the following facts, as testified to by Sergeant Jeff Kunkleman of the Troy Police Department.

**{¶ 4}** In the early morning hours of May 6, 2012, the Troy police received a report of a hit-skip accident involving a pedestrian near the Dollar General store. The accident had been followed by an assault on the pedestrian, Mary Hartwick, by a female occupant of the vehicle. During their investigation of the accident, the police found a large earring with the word "Sexy" written into the design. They suspected that the earring might have belonged to Hartwick's assailant.

**{¶ 5}** As part of his investigation of the accident and assault, Officers Long and Kunkleman went to the Upper Valley Medical Center (UVMC), where they encountered Cortezissa Johnson and the defendant, Ishmail Johnson. Cortezissa[1] matched the description of the woman who had assaulted Hartwick, and she was wearing a single earring that matched the one found at the scene. Cortezissa also had a large "knot" on her head. When she was questioned by Officer Long, Cortezissa denied any involvement in the accident or assault and said that the knot on her head had been caused by an altercation with Johnson the previous day. The officers believed that the injury looked like it had been sustained more recently. However, Cortezissa suggested that she had lost her earring near the Dollar General store when Johnson had forced her into a vehicle at that location. Cortezissa was arrested for assaulting Hartwick.

---

[1] In the interest of clarity, we will refer to the defendant as "Johnson" and to his girlfriend, Cortezissa Johnson, as "Cortezissa."

{¶ 6}     During questioning at the police station, Cortezissa admitted that the domestic violence and injury to her head had occurred that night, rather than the previous night.  She stated that Johnson had dragged her into a friend's vehicle more than once during the course of the evening.

{¶ 7}     After talking with Cortezissa at the police station, Sgt. Kunkleman went to "try to talk" to Johnson.  While driving to Johnson's home around 6:30 a.m., Kunkleman saw Johnson walking along West Main Street near a Family Video store.  It was daylight by this time.  Kunkleman pulled his cruiser to the curb and asked Johnson (through an open window) to come over to the car to talk about the hit-skip accident and about the alleged domestic violence.  At this point, Kunkleman viewed the contact with Johnson, with whom he had "a   pretty good rapport," as consensual.

{¶ 8}     Although Johnson initially said "Okay" to Kunkleman's request that they talk, he almost immediately began to back away from the cruiser, then claimed he had to go to his apartment before speaking with Kunkleman.  Johnson turned away from the cruiser and Kunkleman.   According to Kunkleman, Johnson was "more hesitant than [in Kunkleman's] past dealings with him," and Kunkleman "knew things were going bad at that point."  Kunkleman observed Johnson "doing something in his waistband area" or in his sweatshirt pocket, but because Johnson was facing away from Kunkleman by this time, Kunkleman could not see what Johnson was doing.  Kunkleman's "training told [him] that * * * there was something bad happening."

{¶ 9}     Kunkleman called for backup.   Kunkleman exited his cruiser and repeatedly instructed Johnson to stop and to "get his hands out."   Kunkleman cut Johnson

off, got Johnson's attention by showing his taser, and ordered Johnson to the ground. Johnson bent over but did not get on the ground; Kunkleman said it was "like [Johnson] was trying to decide what he was going to do." When Kunkleman did get Johnson to the ground, Johnson initially resisted being handcuffed. Kunkleman asked Johnson "what he had," and Johnson responded that there was a gun in his pants. Johnson asked Kunkleman to get the gun out, but Kunkleman held Johnson's hands away from Johnson's waistband until additional officers arrived. Another officer subsequently removed a loaded .380 semi-automatic from Johnson's underwear.

{¶ 10}    The officers discovered that the gun had been stolen. When Johnson was informed of this fact, he initially refused to talk with the officers at all. Later, he agreed to talk about the hit-skip accident and the domestic violence, but not about the gun.

{¶ 11}    On June 7, 2012, Johnson was indicted on one count each of carrying concealed weapons, receiving stolen property, and having weapons while under disability. He pled not guilty and filed a motion to suppress evidence, in which he argued that Sergeant Kunkleman did not have legal authority to detain him or to threaten to use force against him "in order to obtain a witness statement." Johnson argued that the evidence obtained as a result of his detention and "subsequent pat down" should be suppressed. The trial court overruled his motion.

{¶ 12}    Johnson changed his plea to no contest and was found guilty on each count. He was sentenced to 12 months of imprisonment for carrying a concealed weapon, to 12 months for receiving stolen property, and to 18 months for having weapons while under disability. The trial court ordered that his sentences run concurrently to each other, but

consecutively to a sentence in another case.

{¶ 13}    Johnson raises one assignment of error on appeal.

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REFUSING TO SUPPRESS ITEMS SEIZED PER AN ILLEGAL AND UNCONSTITUTIONAL SEARCH.

{¶ 14}    Johnson claims that he terminated the consensual encounter with the officer by walking away and indicating that he did not want to talk.   He asserts that the officer had no reasonable basis to detain him beyond that point.

{¶ 15}    "[The] [a]ppellate standard of review for a motion to suppress presents a mixed question of law and fact.  When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.  Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the legal standard." *State v. Brock*, 2d Dist. Montgomery No. 23665, 2010-Ohio-5885, ¶ 12, quoting *State v. Burnside*, 100 Ohio St.3d 152, 154-55,   2003-Ohio-5372, 797 N.E.2d 71.

{¶ 16}    The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures.  *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).   Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin*,

2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry*. We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶ 17} The trial court relied on *Terry's* holding in denying Johnson's motion to suppress. The court concluded that the officer had clearly acted within his authority to stop and question Johnson, who "was potentially a witness to the assault/hit skip, but he was also the named assailant in domestic violence allegations" made by Cortezissa. The court found that Johnson's "unusual behavior" and "furtive movements," viewed in the context of the events throughout the evening and in the eyes of a seasoned police officer, justified the officer's response, and that the stop was reasonable under *Terry*.

{¶ 18} The parties agree that the officer was authorized to approach Johnson and inquire whether he would answer any questions about the events of the evening that were under investigation. The central question before the trial court was whether Johnson's "unusual" behavior in response to this request justified the officer's concern that Johnson posed a danger to him or was then engaged in illegal activity.

{¶ 19} Although the officer did not expressly testify that he had been in fear of Johnson, his concern could reasonably be inferred from the fact that he knew Johnson, called for backup, believed "things were going bad," repeatedly ordered Johnson to show his hands, and held Johnson's hands away from his waistband while waiting for backup to

arrive. The trial court reasonably concluded that Johnson's manner of backing away from the officer, which included trying to remove something from his waistband, and his failure to comply with the officer's requests that he stop and/or show his hands justified the officer's concern that Johnson may pose a danger to the officer.

{¶ 20} We agree that merely changing one's mind about talking to an officer, walking away, or acting in an "unusual" fashion would not justify a *Terry* stop or patdown. However, under the circumstances presented, we agree with the trial court's conclusion that the officer was justified in detaining Johnson for further investigation, that Johnson's detention did not violate his Fourth Amendment rights, and that the evidence need not have been suppressed.

{¶ 21} The assignment of error is overruled.

{¶ 22} The judgment of the trial court will be affirmed.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Robert E. Long III
J. Allen Wilmes
Hon. Christopher Gee