[Cite as *State v. Miller*, 2014-Ohio-5649.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-140068 |
| | | TRIAL NO. B-1303122 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| COURTNEY MILLER, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 24, 2014

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Arenstein & Gallagher* and *Hal R. Arenstein*, for Defendant-Appellee.

Please note:  this case has been removed from the accelerated calendar.

**HILDEBRANDT, Presiding Judge.**

{¶1}   The state of Ohio appeals the trial court's judgment granting a motion to suppress a statement made by defendant-appellant Courtney Miller in a prosecution for voluntary manslaughter, carrying a concealed weapon, illegal possession of a firearm in a liquor-permit premises and tampering with evidence. Because the record demonstrates that the police officers continued the interrogation after Miller invoked his Fifth Amendment right to counsel, we affirm the trial court's judgment.

{¶2}   In a single assignment of error, the state argues that the trial court erred in granting Miller's motion to suppress his statement.  We disagree.

{¶3}   Appellate review of a motion to suppress presents a mixed question of law and fact.  We must accept the trial court's findings of fact as true if competent, credible evidence supports them.  But we must independently determine whether the facts satisfy the applicable legal standard.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶4}   At the suppression hearing, Detective Bill Hilbert testified that Miller had been brought in for questioning regarding a shooting that had occurred at a local bar.  The video of Miller's police interrogation was admitted into evidence.  The video demonstrates that Miller was read the *Miranda* warnings and that he waived his rights when he signed the notification-of-rights form.  Within the first seven minutes of the interrogation, Miller made two equivocal requests for an attorney.  After the second reference, the detectives told Miller, "We can only go by what we're being told and what we see * * * And we don't have your side of the story, okay? * * * So our

hand's going to be played by now by you not telling us what happened and why it happened, okay?"

{¶5} Shortly after these statements, Miller unequivocally invoked his right to have counsel present before answering further questions. At that time, the detectives ceased the interrogation, left the room, and returned 20 minutes later to photograph Miller in an effort to document any injuries that Miller may have sustained from his alleged involvement in the shooting incident at the bar. The police officers then left the room again.

{¶6} The detective returned to the room an hour later, informing Miller that he was going to be charged with murder. Detective Hilbert stated, "So you're going to be charged, you'll be taken over to the Justice Center. You know, I don't have your side so that's what I have to do, okay?" Miller responded, "So you want my side, would it help any?" Detective Hilbert told Miller that the police could not ask him any questions because "you invoked – you want a lawyer, okay * * *." Miller then offered to tell his side of the story. Before recording Miller's statement, the detectives had Miller resign the notification-of-rights form indicating that he was waiving his right to an attorney.

{¶7} When a suspect in police custody invokes his Fifth Amendment right to counsel, police interviewers must cease the interrogation and may not further initiate the interview until the suspect's lawyer is present. *Edwards v. Arizona*, 451 U.S. 477, 484-485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Any statement, question or remark (other than those normally attendant to arrest and custody) that the police should know are reasonably "likely to elicit an incriminating response" is an interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d

297 (1980). "The latter portion of this definition [of interrogation] focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Id.*

{¶8} Upon a review of the record, we hold that the detective's statement to Miller that he was going to be charged with murder because the police did not have his side of the story was a statement that the police knew was reasonably likely to elicit an incriminating response. In fact, the detectives tried this tactic earlier in the interrogation between the second and third time that Miller had requested an attorney to be present, hoping to get a response from Miller. Further, focusing on Miller's perception, rather than the intent of the police, as we are required to do under *Innis*, it is evident from his response to the detective's statement that Miller believed that if the detectives had his side of the story there was a possibility he would not be charged with murder or any crime. Based on these circumstances, the detective's statement that Miller was going to be charged with murder because the police did not have his side of the story was an interrogation. Because Miller had previously invoked his right to counsel, any further interrogation was improper. Accordingly, the trial court properly suppressed Miller's statement.

{¶9} The single assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**HENDON, J.**, concurs separately.
**DINKELACKER, J.**, dissents.

**HENDON, J.**, concurring separately,

{¶10} In my opinion, this difficult decision hinges upon Miller's clear and unambiguous request for an attorney. As Judge Dinkelacker writes in his dissent,

"After a short time, Miller asked for an attorney." There was no equivocation on the part of Miller, and questioning should have ceased at that point. The discourse that occurred later—and which creates the compelling argument made by the dissent—quite simply should never have occurred. I am compelled, somewhat reluctantly, to concur in the majority opinion.

**DINKELACKER, J.,** dissenting.

{¶11} Miller was taken into custody to be questioned regarding the shooting of another person. Detective Hilbert advised Miller of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L. Ed. 2d 694 (1966). In so doing, Detective Hilbert followed the law.

{¶12} After a short time, Miller asked for an attorney. Once a suspect unequivocally invokes his Fifth Amendment right, all questions must cease. *Edwards v. Arizona*, 451 U.S. 477, 484-485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). And, accordingly, Detective Hilbert halted the interrogation of Miller. When he did so, Detective Hilbert again followed the law.

{¶13} After time was taken to photograph Miller's possible injuries and to discuss the matter with the Chief Assistant Prosecuting Attorney Mark Piepmeier, Detective Hilbert returned to speak with Miller. The following exchange took place:

> **Detective Hilbert:** Hey Courtney. I talked to the prosecutor. And, uh, here's what's gonna happen. * * * Um, we're gonna charge you with murder. Alright? Um, between now and the time you get an attorney, if you want to make a statement, then that's between you and him. And you contact me. I'm not gonna reach out to you. I can't, okay?

So, you're gonna be charged, you'll be taken over to the Justice Center. Um, you know, I don't have your side so that's what I have to do, okay?

**Miller:** What will it take to get your [sic] side?

**Detective Hilbert:** Wait... what...

**Miller:** What you want? So you want my side, will that help me?

**Detective Hilbert:** I can't, I can't...

**Miller:** ... or anything?

**Detective Hilbert:** I can't ask you nothing. You invoked ... you want a lawyer. Okay? The only thing you can do is if you want to tell me, that's up to you. But you have to waive your right to an attorney. And I can't advise you to do that or not. That's up to you. I want to make that very clear. If you want to give me a statement, that's gonna be on you, not me. I'm not gonna ask for one, but if you want to. Alright? So, we've got some paperwork to write up, and then we're gonna take you over to the Justice Center. You understand?

**Miller:** I'll tell you a story.

**Detective Hilbert:** Okay, now you remember I read you your rights to you. Okay? Is there anything you have a question about right now?

**Miller:** So, when I tell you this, what is this all up to you? You and the prosecutor?

**Detective Hilbert:** No, still it's the prosecutor. I'll talk to him when we get done with your statement. I'm not looking to jam anybody up, but I need to get to the truth.

**Miller:** I understand what you saying.

{¶14} The information provided to Miller was all truthful. At no time were any threats or illicit promises made. There was no deprivation or overt coercion. Detective Hilbert followed the law.

{¶15} Prior to Miller speaking to Detective Hilbert, Miller waived his *Miranda* rights for a second time by signing the waiver of rights form. The record shows that Miller expressly waived his *Miranda* rights knowingly, intelligently, and voluntarily. Under the totality of the circumstances, Miller made a clear waiver. He wanted to tell his side of the story and, despite several warnings by Detective Hilbert, eventually he did. Again, Detective Hilbert followed the law.

{¶16} My colleagues have interpreted Detective Hilbert's statement "you know, I don't have your side of this, so that's what I have to do" as a subtle compulsion, concluding that Miller was tricked or forced into making a statement after invoking his right to remain silent. But this conclusion ignores the overall context of the statement and does not properly apply the United States Supreme Court ruling in *Innis*. Detective Hilbert's statement should be interpreted for what it was—a truthful, isolated, innocuous statement made to a suspect who was about to enter into the criminal justice process.

{¶17} Further, the record, at least in my review, is devoid of anything more than conjecture that Detective Hilbert was attempting to elicit an incriminating response. It is clear watching the video, from both his demeanor and what he says, that, in Detective Hilbert's mind, the interrogation was over when he told Miller what would happen next. So, even in this area, Detective Hilbert followed the law.

{¶18} Further, I believe that since Miller made a knowing, voluntary, and intelligent waiver *Miranda* rights, he cannot now claim that his statement was the result of any "compulsion" on the part of the detectives.

{¶19} In summary, a review of the testimony presented at the motion to suppress and the recording of the interview reveals that, Detective Hilbert meticulously followed the law at every stage of this process. After Miller invoked his right to counsel, the detectives stopped the interrogation and left the room. Detective Hilbert then spoke with the Chief Assistant Prosecuting Attorney Piepmeier about the status of the case. The prosecutor advised Detective Hilbert to charge Miller with murder and take him to the Justice Center. The detectives returned to the room and inform Miller of this fact.

{¶20} There is no evidence in the record that the conduct of the detectives was a ruse to convince Miller to incriminate himself. Everything that Detective Hilbert told him was true. Hilbert repeatedly warned Miller that the detectives would not talk to him further, that he should wait until after he talked with his attorney, and that if he chose to say anything else it was "on him."

{¶21} I cannot conclude that having a police officer give an accused accurate information about what is going to happen to them next in the process is an interrogation or it's functional equivalent. I also cannot conclude that a confession should be suppressed when the police followed every procedural rule and did everything right, even if one isolated comment could be seen as improper. Given the totality of his custodial experience, Miller's statement was not the subject of unlawful coercion. While it would certainly be startling to learn that one is being charged with murder, that is what was happening to Miller. He wanted to give his side and tell his story. Detective Hilbert followed the law, and I am compelled to dissent.

**Please note:**

> **The court has recorded its own entry on the date of the release of this opinion.**