[Cite as *State v. Pierce*, 2015-Ohio-4392.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| RICHARD L. PIERCE | : | Case No. 14 CAA 12 0080 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Delaware County
                                Court of Common Pleas, Case No.
                                13CR-I-10-0479

JUDGMENT:                       Affirmed

DATE OF JUDGMENT:               October 19, 2015

APPEARANCES:

For Plaintiff-Appellee                     For Defendant-Appellant

CAROL HAMILTON O'BRIEN                      TODD A. WORKMAN
Delaware County Prosecutor                  Workman Law Firm
                                            P.O. Box 687
By: AMELIA BEAN-DEFLUMER                    Delaware, Ohio 43015
Assistant Prosecuting Attorney
140 North Sandusky Street
Delaware, Ohio 43015

*Baldwin, J.*

{¶1}   Appellant Richard Pierce appeals a judgment of the Delaware County Common Pleas Court convicting him of two counts of improper handling of a firearm in a motor vehicle (R.C. 2923.16(D)(1), (2)) and two counts of operating a motor vehicle under the influence of alcohol (R.C. 4511.19(A)(1)(a), (b)) and sentencing him to a term of community control.  Appellee is the State of Ohio.

STATEMENT OF FACTS AND CASE

{¶2}   On July 2, 2013, Officer Daniel Hord of the Westerville Police Department observed a silver vehicle make an illegal U-turn.  The vehicle swerved left of center before going back over to the right lane.  Officer Hord stopped the vehicle, which was driven by appellant.

{¶3}   When asked for his driver's license, appellant handed the officer his cell phone before eventually locating his license.  The officer was informed that appellant held a permit to carry a concealed weapon.  He asked appellant if he had a gun on him. Appellant responded that he did not have one on him, but there was a gun in the car.

{¶4}   Appellant initially said that he was not drinking, but then admitted to drinking a screwdriver.  The officer performed field sobriety tests, and placed appellant under arrest for driving under the influence of alcohol.  A loaded pistol was found under the driver's seat of the car.

{¶5}   Appellant was taken to the police department booking area, where he became nonresponsive to questioning and medics were dispatched.  Although the medics could not find any medical problem, appellant asked to be transported to a hospital and was taken to St. Ann's hospital.  He consented to a blood test, and blood

was drawn by a nurse at the hospital. The blood was tested at the Ohio State University Wexner Center, and appellant was found to have .16 percent weight per unit volume of alcohol in his blood.

{¶6} On October 11, 2013, appellant was indicted on two counts of improper handling of a firearm in a motor vehicle (R.C. 2923.16(D)(1), (2)) and two counts of operating a motor vehicle under the influence of alcohol (R.C. 4511.19(A)(1)(a), (b)). Appellant filed a motion to suppress. Following a hearing, the court overruled the motion. The case proceeded to jury trial, and appellant was convicted as charged. At sentencing, the court merged counts one and two, and also merged counts three and four. The State elected to proceed to sentencing on counts one and three. Appellant was sentenced to a term of community control.

{¶7} Appellant assigns error to the judgment overruling his motion to suppress the blood test results:

{¶8} "THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT'S MOTION TO SUPPRESS WHEN THE STATE FAILED TO DEMONSTRATE THAT IT HAD SUBSTANTIALLY COMPLIED WITH THE REGULATIONS DIRECTLY RELATED TO BLOOD-ALCOHOL TESTING."

{¶9} Appellant argues that the court erred in overruling his motion to suppress the blood alcohol test results because the State failed to prove that the blood was drawn into a vacuum container with a solid anticoagulant as required by OAC 3701-53-05(C).

{¶10} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the

findings of fact are against the manifest weight of the evidence. See *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726 (1993). Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. See *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue that the trial court incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 627, 620 N.E.2d 906 (1993); and *State v. Guysinger,* supra.

{¶11} The Ohio Supreme Court has held that rigid compliance with ODH regulations is not required as such compliance is not always humanly or realistically possible. *State v. Plummer*, 22 Ohio St.3d 292, 294, 490 N.E.2d 902 (1986). Rather, if the state shows substantial compliance with the regulations, absent prejudice to the defendant, alcohol tests results can be admitted in a prosecution under 4511.19. *Id.* In *State v. Burnside*, 100 Ohio St.3d 152, 159, 797 N.E.2d 71 (2003), the Ohio Supreme Court limited the substantial-compliance standard set forth in *Plummer* to "excusing only errors that are clearly de minimis." *Id.*

{¶12} In *State v. Lentz,* 5th Dist. Delaware No. 09CAC070065, 2010–Ohio–762,¶12,  we reviewed the threshold the State must reach in presenting its evidence:

The burden to establish substantial compliance, however, only extends to the level with which the defendant takes issue with the legality of the test. [*State v. Johnson,* 137 Ohio App.3d 847, 851, 739 N.E.2d 1249 (2000); *State v. Crothers,* 12th Dist. Clinton No. CA2003–08–020, 2004–Ohio–2299, at ¶ 10.] When the defendant's motion to suppress merely raises a generalized claim of inadmissibility and identifies the section(s) of the Administrative Code implicated in that claim, the burden on the state is slight. [*State v. Bissaillon,* 2nd Dist. Greene No. 06–CA–130, 2007–Ohio2349 at ¶ 12; *State v. Williams,* Montgomery App. No. 16554, unreported, 1998 WL 214595 (Apr. 24, 1998); *State v. Embry,* 12th Dist. Warren No. CA2003–11–110, 2004–Ohio–6324, at ¶ 24] (simply reiterating Administrative Code provisions creates a burden on the State to respond only in general to the issues raised). The State is only required to present general testimony that there was substantial compliance with the requirements of the regulations; specific evidence is not required unless the defendant raises a specific issue in the motion to suppress. *Id.; Bissaillon,* supra, 2007–Ohio–2349 at ¶ 12; *State v. Crotty,* 12th Dist. Warren No. CA2004–05–051, 2005–Ohio–2923, at ¶ 19.

{¶13} Appellant argues that the State failed to prove compliance with OAC 3701-53-05(C) in the manner in which the sample was drawn. The blood-testing procedure in OAC 3701-53-05 requires the state to (1) use an aqueous solution of a nonvolatile antiseptic on the skin, (2) use a sterile dry needle to draw blood into a vacuum container with a solid anticoagulant, (3) seal the blood container in accordance with the appropriate procedure, and (4) refrigerate the blood specimen when it is not in transit or under examination. The purpose of these regulations is to ensure the accuracy of the alcohol-test results. *Burnside, supra.*

{¶14} Appellant argues that the State did not prove that a sterile dry needle was used to draw blood into a vacuum container with a solid anticoagulant. However, appellant did not specifically raise this issue in his motion to suppress. Appellant's motion states in general terms, "The blood sample obtained from Defendant was not obtained in compliance with Revised Code Section 4511.19 and Ohio Administrative Code Chapter 3701-53[.]" In the argument section of his motion, appellant only specifically challenges the sealing, labeling and refrigeration of the sample, stating, "Ohio Administrative Code Section 3701-53-05 provides the manner in which blood samples are to be collected and handled. The State must prove that the blood sample was collected in compliance with the requirements of this section. The State must also prove that the container holding the blood sample was sealed and labeled properly and that the blood sample was refrigerated except during transit or while under examination. Again, nothing provided in discovery would suggest that the requirements of O.A.C. Section 3701-53-05 were met."

{¶15} Because appellant did not specifically raise the issue of use of a sterile dry needle to draw blood into a vacuum container with a solid anticoagulant, the State need only prove compliance with this requirement in a generalized manner, and need not present specific evidence going to each requirement.

{¶16} In *State v. Crothers,* 12th Dist. Clinton No. CA2003-08-020, 2004-Ohio-2009, the court concluded that a phlebotomist's testimony that she used a police-provided blood draw kit with a general description of its contents and no knowledge concerning the anticoagulant was sufficient to demonstrate substantial compliance in response to a generalized claim by the defendant that the blood test was not in accordance with the provisions of OAC 3701-53-01. *Id.* at ¶27.

{¶17} In the instant case, the evidence demonstrated that the sample was in a state container provided by the Department of Health and was sealed before turning it over to the laboratory. Supp. Tr. (II) 110. The nurse who drew the blood had roughly 30 years of experience, and testified that she drew the blood in accordance with standard procedure for law enforcement blood draws. Supp. Tr. (II) 117. She testified that in this case, she used a kit provided by the police, and that it contained a needle, tubes, swabs, and Betadine swabs. Supp. Tr. (II) 118. She testified that after drawing blood using the kit, she labeled it, put it in the bag, and gave it to the police officer. Supp. Tr. (II) 119.

{¶18} The evidence that the nurse used the kit provided to her by police and her general description of the contents was sufficient to demonstrate substantial compliance in light of appellant's generalized challenge to the blood draw. Appellant only specifically argued in his motion that the sample was not sealed and labeled properly,

and that it was not properly refrigerated. The burden on the State to prove compliance with the portion of the OAC concerning use of a sterile dry needle to draw blood into a vacuum container with a solid anticoagulant was therefore slight, and the State met the burden by the nurse's generalized testimony that she used the needle, tubes, and other materials provided to her in the law enforcement kit.

{¶19} The assignment of error is overruled. The judgment of the Delaware County Common Pleas Court is affirmed. Costs are assessed to appellant.

By: Baldwin, J.

Farmer, P.J. and

Delaney, J. concur.